**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-1788

_____

United States of America,          *
                                     *

      Appellee,           *

                                   *  Appeals from the United States
      v.                         *  District Court for the Eastern
                                   *  District of Missouri.

Gustavo Grajales-Montoya,    *

                                   *

      Appellant.        *

_____

No. 96-2016

_____

United States of America,     *

                                   *

      Appellee,        *

                                   *

      v.                   *

                                   *

Elisa Deluca, Also Known as Elisa  *
Maldonado, Also Known as Elisa   *
Kaukereit,                   *

                                   *

      Appellant.        *

_____

No. 96-2018

_____

United States of America,          *
                                    *
          Appellee,                 *
                                    *
     v.                             *
                                    *
George A. Deluca, Also Known as     *
Poppy,                              *
                                    *
          Appellant.                *

                    _____

              Submitted: March 11, 1997

                Filed: June 26, 1997

                    _____

Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and MORRIS
     SHEPPARD ARNOLD, Circuit Judge.

                    _____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

     All three defendants in a narcotics conspiracy trial appeal their convictions; two
of them appeal their sentences. We affirm in all respects.


                              I.

     After a five-and-a-half-week trial, a jury convicted Elisa Deluca, George Deluca,
and Gustavo Grajales-Montoya on various charges relating to the operation of a multi-
state cocaine and heroin ring. The jury found all three defendants guilty of conspiring

-2-

to distribute, and to possess with intent to distribute, five or more kilograms of cocaine and one or more kilograms of heroin. It also found both of the Delucas guilty of conspiring to commit various money-laundering offenses, and Mr. Deluca guilty of traveling in interstate commerce to promote the distribution of drugs. The trial court[1] sentenced the Delucas to life imprisonment and Mr. Montoya to imprisonment for 135 months. Each defendant raises several points on appeal, the most prominent among them being alleged evidentiary errors, alleged instructional errors, the alleged insufficiency of the government's evidence, and alleged Jencks Act and Brady violations. We affirm.

## II.

Elisa Deluca first contends that the trial court abused its discretion by admitting into evidence, and sending to the jury room, a document prepared by the government containing a chronology of what it believed to be relevant events. The chronology lists occurrences such as wire transfers, bank deposits, large cash purchases, airplane travel, and meetings among the co-conspirators, and was derived from documents such as bank and Western Union records, receipts, and surveillance records, all of which were themselves admitted into evidence. The trial court admitted the chronology pursuant to Fed. R. Evid. 1006, which states that "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation."

The rule appears to contemplate, however, that a summary will be admitted instead of, not in addition to, the documents that it summarizes, see United States v. Possick, 849 F.2d 332, 339 (8th Cir. 1988), and United States v. Robinson, 774 F.2d 261, 275-76 (8th Cir. 1985), and that it will have been prepared by a witness available for cross-examination, not by the lawyers trying the case. See Possick, 849 F.2d at

---

[1]The Honorable Stephen Nathaniel Limbaugh, United States District Judge for the Eastern District of Missouri.

339, and <u>United States v. Orlowski</u>, 808 F.2d 1283, 1289 (8th Cir. 1986), <u>cert. denied</u>, 482 U.S. 927 (1987). We therefore believe that Fed. R. Evid. 1006 does not allow for the admission of a summary such as the one contested by Mrs. Deluca, that is, one that was prepared by a lawyer trying the case and that restates and distills other properly admitted exhibits. In fact, we believe that such a summary is a written argument. In light of the extensive evidence presented at trial against Mrs. Deluca, however, and because all of the information contained in the summary was available to the jury from other exhibits, the trial court's error in admitting the summary was harmless.

Mrs. Deluca next asserts that the trial court erred in overruling her objection to an instruction that dealt with attempts by a defendant to conceal evidence or influence witnesses. According to Mrs. Deluca, that instruction could have been justified only by questions during the government's cross-examination of her that insinuated that she had urged witnesses in the Dominican Republic not to testify; she further urges that, for reasons that we shall discuss, there was insufficient evidence to support the instruction. Because there was, however, testimony that George Deluca instructed the son of a woman working at Mrs. Deluca's beauty parlor (through which the Delucas occasionally laundered money) not to give federal agents any papers or information, we believe that the instruction was appropriate. <u>See</u> <u>Closs v. Leapley</u>, 18 F.3d 574, 579-80 (8th Cir. 1994). The notes on use for the Eighth Circuit model jury instructions (after which the trial court patterned the instruction in question), moreover, indicate that the instruction need not be limited to certain defendants when all of the defendants are part of a conspiracy. <u>See</u> Eighth Circuit Manual of Model Jury Instructions § 4.09 (West 1996). We believe that this instruction correctly states the law. <u>See</u> <u>United States v. Dittrich</u>, 100 F.3d 84, 86-87 (8th Cir. 1996), <u>cert. denied</u>, 117 S. Ct. 1454 (1997).

Mrs. Deluca also argues that the trial court abused its discretion in denying her motion for a mistrial after the prosecution cross-examined her about whether she had encouraged potential witnesses from the Dominican Republic not to testify during calls arranged by her trial counsel. Mrs. Deluca maintains that the questions were improper

because they implied a fact that the prosecution knew the evidence would not support, and because they implied that her counsel participated in the obstruction of justice. While it is true that prosecutors must have a good-faith basis for questions asked during the cross-examination of a defendant, see United States v. Miller, 974 F.2d 953, 960 (8th Cir. 1992), Mrs. Deluca abandoned this claim during trial by basing her motion for a mistrial solely on the alleged damage to her counsel's credibility.

With respect to the latter claim, we first note that, in the circumstances presented here, the inference that her counsel participated in the obstruction of justice, if one could reasonably be drawn at all, was an extremely weak one. Although such an inference might colorably raise concerns that a defendant's Fifth Amendment right to due process or Sixth Amendment right to counsel had been undermined, Mrs. Deluca has not specified a legal right that she claims was violated by any inferences resulting from the contested line of questioning. We therefore hold that the trial court did not abuse its broad discretion in determining whether a mistrial is required by refusing to grant Mrs. Deluca's motion. See United States v. Clair, 934 F.2d 943, 945 (8th Cir. 1991).

Mrs. Deluca last contends that the trial court erred by refusing to instruct the jury on the distinction between the proof required for a single conspiracy and that required for multiple conspiracies with respect to the money-laundering count. Although Mrs. Deluca argues on appeal that the evidence presented at trial supports the existence of two different conspiracies (namely, a conspiracy to transfer money to the New York suppliers and another conspiracy to enable the Delucas to improve their life-style), at trial Mrs. Deluca argued that the instruction was warranted because there were separate conspiracies for each wire transfer and because the evidence demonstrated that there were separate conspiracies of which she was not a member. This shift in the factual grounds for Mrs. Deluca's argument renders her prior objection insufficient for the purposes of Fed. R. Crim. P. 30, which requires parties who challenge jury instructions to have "stat[ed] distinctly the matter to which that party objects and the grounds of the

objection" before the jury retires.  See  United States v. Young, 875 F.2d 1357, 1360 (8th Cir. 1989) (change in factual grounds for objection to failure to give lesser-included offense instruction).

Because Mrs. Deluca has waived her objection to the trial court's refusal to give her proposed instruction, we may review that decision only for plain error.  See United States v. Caldwell, 97 F.3d 1063, 1068 (8th Cir. 1996).   After a careful look at the record, we believe that the trial court's decision not to use Mrs. Deluca's proffered instruction was not plain error, that is, we conclude that the omitted instruction did not " 'affect the defendant's substantial rights resulting in a miscarriage of justice.' "  United States v. Pena, 67 F.3d 153, 156 (8th Cir. 1995), quoting United States v. Gantos, 817 F.2d 41, 43 (8th Cir. 1987), cert. denied, 484 U.S. 860 (1987).  The trial court is required to instruct the jury on multiple conspiracies only if evidence exists to support such a finding, see id., and Mrs. Deluca points to no evidence tending to prove the existence of a money-laundering conspiracy of which she was not a member or that did not involve the proceeds of the cocaine and heroin ring.  Indeed, the evidence overwhelmingly supports the existence of a single money-laundering conspiracy masterminded by the Delucas in an attempt to hide the ill-gotten gains of their criminal enterprise.

III.

George Deluca first asserts that the trial court erred when it relied on prosecution assertions that it possessed no Jencks Act or Brady materials, see 18 U.S.C. § 3500(b) and Brady v. Maryland, 373 U.S. 83, 87 (1963), from interviews conducted with two key prosecution witnesses, the Delucas'  St. Louis distributor and one of their New York suppliers.  Prior to trial, the Assistant United States Attorney ("AUSA") prosecuting the case conducted two interviews with the New York supplier in conjunction with several other law enforcement agencies.  The supplier speaks no English, and a translator was used throughout the interviews.

-6-

Mr. Deluca argues that the notes taken by the AUSA and other federal agents constitute Jencks Act material because the source somehow "adopted or approved" the notes, see 18 U.S.C. § 3500(e)(1), when the translator repeated the agents' English questions in Spanish for the supplier and the supplier's Spanish answers in English for the agents. We do not follow the logic of this argument, and we note, moreover, that Mr. Deluca offers no evidence tending to show that the supplier ever reviewed the agents' notes herself (which would have been quite difficult, considering the language barrier), or that the interpreter translated the contents of the notes to the supplier. Mr. Deluca has thus offered no evidence tending to prove that the supplier "adopted or approved" the agents' notes, see 18 U.S.C. § 3500(e)(1) and United States v. Willis, 997 F.2d 407, 413-14 (8th Cir. 1993), cert. denied, 510 U.S. 1050 (1994), nor has he produced any evidence tending to show that the notes contained substantially verbatim quotations of the source's translated testimony, see 18 U.S.C. § 3500(e)(2) and Willis, 997 F.2d at 414. We therefore hold that Mr. Deluca has failed to make a colorable claim that the notes he desires are Jencks Act materials, and, absent such a showing, the trial court did not err by refusing to conduct an in camera inspection of the notes. See Willis, 997 F.2d at 414.

Similarly, Mr. Deluca has proffered no evidence tending to show that the materials that he desires relevant to the St. Louis distributor, namely, interview notes taken by an IRS agent and by the AUSA, were adopted or approved by the witness or contained substantially verbatim quotations. Mr. Deluca instead argues that the trial court should have reviewed the relevant documents because allowing the AUSA to determine what constitutes Jencks Act material gives the AUSA too much discretion. We therefore find that he has again failed to make a colorable claim that undisclosed Jencks Act material existed with respect to the distributor. See id. We accordingly find no error in the trial court's decision not to conduct an in camera review of the notes, and we also deny Mr. Deluca's motion asking this court to conduct such a review.

On appeal, Mr. Deluca intimates, for the first time, that the IRS agent's notes are statements of the agent (who testified at trial) and that they therefore constitute Jencks Act material with respect to the agent. Because Mr. Deluca did not advance this argument at trial, it is waived and we need not address it here. See United States v. Hoelscher, 914 F.2d 1527, 1535 (8th Cir. 1990), cert. denied, 498 U.S. 1090, 500 U.S. 943 (1991).

Mr. Deluca's cursory allegations that the notes taken during the interviews of the St. Louis distributor and the New York supplier also constitute Brady material fare no better. Mr. Deluca does no more than assert that the trial court's actions violated Brady as well as the Jencks Act and state that Brady requires that exculpatory evidence be turned over to the defense. As Mr. Deluca does not even specifically assert that the contested notes either were exculpatory or contained impeachment material, we believe that he has not complied with Fed. R. App. 28(a)(6) with respect to his Brady claim; we thus deem that claim abandoned and need not consider it. See United States v. Gonzales, 90 F.3d 1363, 1369-70 (8th Cir. 1996).

Mr. Deluca also contends that the trial court committed plain error by allowing a witness to testify that the Delucas had kidnapped, interrogated, and arranged a contract for the murder of their maid. According to the witness, the Delucas believed that the maid knew the whereabouts of a former courier for the Delucas who they believed was cooperating with the government and informing against them. Although Mr. Deluca did not object to this testimony at trial, he now argues that it is evidence of other crimes as governed by Fed. R. Evid. 404(b), and that the trial court erred by admitting it without conforming to the rule's notice requirements. A careful review of the record, however, suggests that this testimony was offered not as evidence of other crimes, but as evidence of the Delucas' attempts to protect themselves and to prolong the life of the conspiracy. Because direct evidence of participation in a conspiracy is probative of the crime charged, Fed. R. Evid. 404(b) is inapplicable, and the trial court

did not err, much less err plainly, in admitting the testimony. See United States v. Kinshaw, 71 F.3d 268, 270 (8th Cir. 1995).

Mr. Deluca further argues that the trial court abused its discretion by preventing him from cross-examining government witnesses about statements made to them by Mrs. Deluca to the effect that he had no knowledge of, or involvement in, the conspiracy. The trial court, relying on Fed. R. Evid. 801(d)(2), precluded such testimony on the grounds that it was hearsay and that it did not fall within the exception to hearsay for admissions by a party-opponent. Mr. Deluca contends that he should be considered a party-opponent with respect to Mrs. Deluca, thus allowing him to introduce her "admission." We reject this contention.

Even if Mr. Deluca could be considered a party-opponent with respect to Mrs. Deluca, he did not seek to offer the statements against her, as required by Fed. R. Evid. 801(d)(2). Mr. Deluca sought to introduce the statements to exonerate himself, and there is no reason to think that his exoneration could in any way depend on Mrs. Deluca's incrimination. We therefore believe that Mr. Deluca sought to introduce the statements against the government's case, rendering them inadmissible unless they could somehow be considered an admission by the government as defined in Fed. R. Evid. 801(d)(2). Because Mrs. Deluca's statements plainly do not constitute statements by the government, see Fed. R. Evid. 801(d)(2), the trial court did not err in excluding them.

Mr. Deluca maintains alternatively that the statements are admissible as statements against penal interest under Fed. R. Evid. 804(b)(3), because any statement by Mrs. Deluca regarding his lack of involvement is, he contends, inculpatory for her. We reject this contention as illogical, because Mrs. Deluca's statements regarding Mr. Deluca's role would not have subjected her to increased criminal liability, see United States v. Ramsey, 999 F.2d 348, 351 (8th Cir. 1993), and, in light of the rest of

the evidence, merely demonstrate one of the methods that the conspirators used to insulate themselves from liability.

IV.

Mr. Deluca challenges his sentence on several grounds, first by asserting that the trial court failed to comply with Fed. R. Crim. P. 32(c)(1), which requires the sentencing court either to make specific findings with respect to any factual determinations contained in a presentence report ("PSR") that have been challenged by a defendant, or to state that the material at issue will not be considered in imposing the sentence. See Fed. R. Crim. P. 32(c)(1) and United States v. Flores, 73 F.3d 826, 834-35 (8th Cir. 1996), cert. denied, 116 S. Ct. 2568 (1996). Mr. Deluca contends that the trial court failed to make the requisite findings with respect to the quantity of drugs attributable to him, his role in the offense, and his obstruction of justice. The trial court acknowledged Mr. Deluca's objections to the PSR, expressly rejected them, and stated that it did so pursuant to hearing all of the evidence presented and reviewing its notes. Although we emphasize the value of specific references to individual pieces of trial testimony, we believe that the trial court's finding in this case satisfied the minimum requirements of Fed. R. Crim. P. 32(c)(1). See Flores, 73 F.3d at 835 (rule satisfied where court rejected defendant's objection "based upon the record and the court's notes of the various witnesses' trial testimony").

Mr. Deluca similarly contests the form and the substance of the trial court's determination that 165 to 170 kilograms of cocaine and 1,660 grams of heroin should be attributed to him, resulting in a base offense level of 38. At the sentencing hearing, the trial court explicitly applied the "relevant conduct" guideline, which holds a conspirator responsible not only for his own acts but also for all of the reasonably foreseeable acts of others taken in furtherance of the conspiracy, see U.S.S.G. § 1B1.3(a)(1)(B) and United States v. Tauil-Hernandez, 88 F.3d 576, 579 (8th Cir. 1996), cert. denied, 117 S. Ct. 1258 (1997), and it therefore held Mr. Deluca responsible for all of the drugs distributed by the conspiracy.

-10-

Mr. Deluca asserts that the trial court's application of the relevant conduct guideline constitutes an error of law because, he maintains, it attributed to him drugs that were from other, separate conspiracies, namely, other conspiracies in which the Delucas' St. Louis distributor was involved. According to Mr. Deluca, because the PSR did not explicitly mention the relevant conduct guideline and because, he asserts, the trial court did not conduct the required relevant conduct analysis, the trial court must have been so confused by his trial counsel's objection to the PSR (which distinguished among the distributor's separate conspiracies) that it incorrectly applied the relevant conduct guideline by attributing the drugs from the distributor's conspiracies to Mr. Deluca. We detect no confusion in the trial court's application of the relevant conduct guideline. On the contrary, it is apparent that the trial court relied on its recollection of over five weeks of trial testimony and numerous exhibits in applying the guidelines.

Because Mr. Deluca was convicted as a co-conspirator, the trial court did not err as a matter of law in applying the relevant conduct guideline, and it could hold Mr. Deluca responsible for all of the drug transactions that fell within the scope of the conspiracy headed by him and Mrs. Deluca. See Flores, 73 F.3d at 833. We accordingly review the trial court's determination of the amounts attributable to Mr. Deluca for clear error, mindful of the fact that we must defer heavily to its findings with respect to witness credibility that enter into such determinations. See United States v. Betz, 82 F.3d 205, 208 (8th Cir. 1996). After a careful perusal of the record, we agree with the trial court that its estimate of the drugs attributable to Mr. Deluca was a conservative one, and we hold that the trial court did not clearly err in calculating the drug quantity attributable to Mr. Deluca at 165 to 170 kilograms of cocaine and 1,660 grams of heroin, and in setting the base offense level at 38.

Mr. Deluca further argues that the trial court's application of the relevant conduct guideline was faulty because the trial court failed to conduct the required relevant conduct analysis, see U.S.S.G. § 1B1.3, application note 2, and that its factual findings

are therefore insufficiently specific.  See United States v. Rice, 49 F.3d 378, 383 (8th Cir. 1995), cert. denied, 115 S. Ct. 2630 (1995).  The trial court, however, read Mr. Deluca's objections, heard arguments on both sides, stated that it was convinced that both Mr. and Mrs. Deluca were leaders of the "entire matter," and noted that its determinations were based on its notes and its recollection of the testimony.  We believe that the trial court very clearly complied with the formal requirements of the guideline. See id.

Mr. Deluca similarly challenges the sufficiency of the trial court's findings with respect to the enhancements for obstruction of justice (two levels) and role in the offense (four levels).  After a careful review of the sentencing transcript, we reject both challenges.  With respect to the enhancement for obstruction of justice, the trial court noted that it was not basing the enhancement on Mr. Deluca's guilt and emphatically stated that it was "absolutely convinced that George Deluca perjured himself over and over and over and over again," although it did not explicitly list particular statements by Mr. Deluca that it believed to be false.  Although we have indicated a preference that a sentencing court state the specific instances of perjury on which it seeks to base enhancements, see United States v. Kime, 99 F.3d 870, 886 (8th Cir. 1996), cert. denied, 117 S. Ct. 1015, 65 U.S.L.W. 3754 (1997), it is enough that it make an independent and specific finding that the defendant committed perjury.  See United States v. Dunnigan, 507 U.S. 87, 95 (1993), and  United States v. Turk, 21 F.3d 309, 313 (8th Cir. 1994).  We must give due regard, moreover, to a trial court's finding that a defendant lied to the jury.  See United States v. Garin, 103 F.3d 687, 689 (8th Cir. 1996), cert. denied, 117 S. Ct. 1323 (1997).  In these circumstances, we hold that the trial court's findings regarding Mr. Deluca's perjury are sufficiently specific.

With respect to the enhancement for Mr. Deluca's role in the offense, the trial court stated that based on all the evidence before it, and reasonable inferences derived therefrom, it was "firmly convinced" that the Delucas were "managers and organizers and leaders of this entire matter....  They put it together, they manipulated it, they

implemented it, and they organized numerous other people to participate in the scheme."

We therefore believe that the trial court made findings sufficient to support the enhancement based on Mr. Deluca's role in the offense. See Rice, 49 F.3d at 383.

V.

Gustavo Grajales-Montoya first contends that his incarceration and trial violated the Speedy Trial Act, see 18 U.S.C. §§ 3161-3174, which requires that an indictment be brought within thirty days of an arrest on a federal criminal charge. See 18 U.S.C. § 3161(b), § 3162(a)(1). On September 23, 1994, federal agents executing the arrest warrant of Elisa Deluca found Mr. Montoya in her company. The agents questioned Mr. Montoya at the scene of Mrs. Deluca's arrest, and, after he admitted that he had entered the United States illegally, they arrested him and turned him over to the Immigration and Naturalization Service ("INS") for deportation proceedings. While Mr. Montoya was in INS custody awaiting deportation, federal agents, believing that he had been, at the very least, a witness to some of the drug trafficking under investigation, obtained a material-witness warrant against him. Mr. Montoya testified before a grand jury in October and November about the Delucas' activities, during which time he was in federal custody but not in INS custody.

Mr. Montoya was returned to INS custody on November 14, after he appeared before the grand jury, and was taken before an immigration judge later that month. At that hearing, the AUSA who had questioned Mr. Montoya during his grand jury appearance suggested several questions to the judge conducting the immigration hearing. After a second immigration hearing in December, 1994, the INS issued a new deportation warrant, and Mr. Montoya remained in INS custody until he was indicted in January, 1995, for perjury before the grand jury. In March, 1995, the perjury indictment was dismissed and the original indictment in this proceeding was filed. Mr. Montoya contends that the lapse between either of the INS detentions and the indictments violated the Speedy Trial Act.

While Mr. Montoya concedes that the Speedy Trial Act does not apply to INS deportation proceedings, see United States v. Cepeda-Luna, 989 F.2d 353, 357 (9th Cir. 1993), he asserts that his initial arrest was really for drug trafficking and that the INS detentions were merely a ruse to detain him for prosecution on those charges at a later time, thus triggering the Speedy Trial Act on either September 23 or November 14 . See id. We disagree with both contentions.

As the magistrate judge[2] found, there is ample evidence that Mr. Montoya's initial arrest was for reasons other than prosecution for drug trafficking.  He admitted that he was an illegal alien, and detention by the INS to initiate deportation proceedings was therefore quite appropriate.  At the conclusion of the grand jury proceedings, Mr. Montoya remained an illegal alien, thus supplying a basis for the second INS detention.

Nor is there any evidence that these detentions were a ruse to evade the Speedy Trial Act.  Even if we were to hold that the act applies to civil deportation proceedings when federal officials, solely to evade the act, have colluded with civil authorities to have those authorities detain a defendant pending federal criminal charges, see id., Mr. Montoya's case does not present such circumstances.  We are persuaded that the fact that federal officials are aware of, and perhaps slightly involved in, the deportation proceedings (as was the AUSA who attended Mr. Montoya's first immigration hearings) would not establish, as a matter of law, the requisite collusion. See  id. at 356.  The trial court therefore did not err in refusing to dismiss Mr. Montoya's case under the Speedy Trial Act.

---

[2]The Honorable David D. Noce, United States Magistrate Judge for the Eastern District of Missouri.

## VI.

Mr. Montoya next contends that his rights to due process, confrontation, and a fair trial were violated when the prosecution called one of the courtroom interpreters to testify briefly about his translation of a short note, written in Spanish, from one co-conspirator to Mrs. Deluca. The interpreter, who translated testimony from English into Spanish and vice versa throughout the trial, was called by the prosecution solely to lay a foundation for the translation's introduction into evidence, and the note's author was later examined and cross-examined about the note's (or, rather, the translation's) contents and significance. Mr. Montoya argues on appeal that the interpreter's appearance as a witness violated Fed. R. Crim. P. 16(a)(1)(E), which requires the government to disclose a summary of an expert witness's credentials, opinions, and the bases and reasons for those opinions at a defendant's request. Mr. Montoya appears to contend that that alleged violation, coupled with the fact that the interpreter had been "intimately involved" with the defense throughout the trial by translating for it, prevented him from effectively cross-examining the interpreter and thus violated his own constitutional rights.

We note not only that Mr. Montoya waived this claim by not asserting it at trial, but also that it is meritless. The interpreter's credentials with respect to his ability to translate the note were not at issue, for he had been translating throughout the entire trial, and, although the defense had had the note in its possession for several months prior to trial, it neither called its own interpreter, offered its own translation, nor challenged the translation offered by the prosecution.

Mr. Montoya argues in addition that the trial court improperly lent credibility to the prosecution's case by commenting favorably upon the interpreter's proficiency and reputation in the jury's presence. We reject that contention as well. Although the interpreter was, at that moment, technically appearing as a witness called by the prosecution, in essence he was still acting as a court-appointed courtroom interpreter, as allowed by Fed. R. Crim. P. 28. We simply fail to see the difference between

-15-

translating a brief note, the contents of which were not at issue, and translating oral testimony in Spanish into English for the jury, as the same interpreter did for two prosecution witnesses. In the unlikely event that the trial court did err by allowing the interpreter to testify, the note contained nothing that implicated Mr. Montoya and therefore did not prejudice him.

Mr. Montoya also argues that the trial court abused its discretion by admitting into evidence only the transcripts of translations of certain tape-recorded conversations in Spanish. At trial, Mr. Montoya requested that the trial court admit the tapes as well as the transcripts so that his counsel could play them before the jury to show the tone of the conversations' actual participants, rather than that of the government's actors who read the tapes' translations in court . Relying on United States v. Valencia, 957 F.2d 1189 (5th Cir. 1992), cert. denied, 506 U.S. 889 (1992), the trial court denied the request, citing the unlikelihood that a listener who was not proficient in Spanish (such as a jury member) would be able to discern relevant inflections and idiosyncrasies (the trial court's word) without knowing the language being spoken. Mr. Montoya has suggested no reliable means of enabling people who do not speak Spanish to interpret inflections and tone, and we cannot think of any, either. In such circumstances, we decline to hold that the trial court abused its discretion in not admitting the tapes of the conversations.

Mr. Montoya makes a variety of arguments based on the sufficiency of the evidence. He maintains that the evidence presented at trial was insufficient to prove a single conspiracy (as alleged in the indictment) because the government's evidence established as a matter of law separate conspiracies for cocaine and for heroin, and that this variance between the government's pleadings and the proof prejudiced his right to a fair trial. The fact that several conspirators do not take part in all of a conspiracy's transactions, however, so long as the jury could have found the existence of one overall

agreement between the conspirators, does not preclude a finding that a single conspiracy existed.  See  United States v. Cabbell, 35 F.3d 1255, 1262 (8th Cir. 1994).

After a careful review of the record in the light most favorable to the jury's verdict, see id., we believe that sufficient evidence existed to prove a single conspiracy to smuggle narcotics from New York to St. Louis and that the addition of heroin was merely an expansion of the conspiracy's activities.  The conspiracy's membership among its top ranks remained the same after the addition, as did the motivation for the conspiracy's actions and decisions, namely, retiring the huge debt that Mrs. Deluca had incurred during the conspiracy's cocaine dealing.  We therefore find no variance between the indictment and the evidence.

Mr. Montoya similarly  asserts that the evidence entitled him to a jury instruction that would have allowed the jury to find him guilty of one of  multiple conspiracies instead of a single overall conspiracy.   Mr. Montoya did not make such a request at trial, and we believe that the trial court's decision not to give such an instruction was not plain error.  A trial court is required to instruct the jury on multiple conspiracies only if evidence exists to support such a finding, see United States v. Pena, 67 F.3d at 156, and the evidence to which Mr. Montoya points is insufficient to suggest anything other than the existence of one overall conspiracy to establish a pipeline for the transportation of illegal drugs between New York and St. Louis.

Mr. Montoya further argues that insufficient evidence existed to prove that he knowingly became a member of the single conspiracy described above.  We reject that contention as well.  The record contains sufficient testimony, wire transfer records, and intercepted phone conversations to prove that he knowingly became a member of the narcotics conspiracy masterminded by the Delucas by helping them expand their product line.

Mr. Montoya additionally asserts that the trial court erred as a factual matter by not granting him a two-level decrease in offense level for being a "minor participant." We review the trial court's factual determinations regarding a conspirator's role in the offense for clear error, see Flores, 73 F.3d at 835, and after a careful review of the record, we conclude that the trial court did not clearly err in determining that Mr. Montoya was not a minor participant.

Lastly, Mr. Montoya joins in Mr. Deluca's assertions of error with respect to the alleged Jencks Act violations. We reject his contention for the reasons already given.


## VII.
We therefore affirm the district court in all respects.


HEANEY, Senior Circuit Judge, concurs in the result.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-18-