# United States Court of Appeals
## For the First Circuit

No. 00-1773

UNITED STATES OF AMERICA,

Appellee,

v.

ANTONIO GARCIA-MARTINEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

Before

Boudin, Chief Judge,
Bownes, Senior Circuit Judge,
and Schwarzer,* Senior District Judge.

Gordon D. Fox for appellant.
Donald C. Lockhart, Assistant United States Attorney, with whom Zechariah Chaffee, Assistant United States Attorney, and Margaret E. Curran, United States Attorney, were on brief for the appellee.

*Of the Northern District of California, sitting by designation.

**SCHWARZER, <u>Senior District Judge</u>.** Appellant Antonio Garcia-Martinez, who pled guilty in September 1999 to unlawful reentry into the United States after a previous deportation in violation of 8 U.S.C. §§ 1326(a) and (b)(2), appeals his judgment of conviction. Contending that the government violated the Speedy Trial Act (STA), 18 U.S.C. § 3161(b), by failing to indict him within thirty days of his civil arrest by the Immigration and Naturalization Service (INS), he moved more than two months after the entry of his plea to withdraw it. He now appeals the district court's denial of his motion.

## FACTUAL AND PROCEDURAL BACKGROUND

Garcia-Martinez, a citizen of the Dominican Republic, was convicted of a heroin distribution offense in the District of Rhode Island on July 26, 1996, and subsequently deported to the Dominican Republic.

On December 28, 1998, police in Providence, Rhode Island arrested Garcia-Martinez, now back in the United States, in connection with a state narcotics investigation. Suspecting that he might be an illegal alien, the police contacted INS Agent David Adkins, who interviewed Garcia-Martinez that same day. Garcia-Martinez admitted that his true name, contrary to the identification documents he

carried, was Antonio Garcia-Martinez, that he was from the Dominican Republic, and that he had been deported once before after committing a drug offense. Adkins confirmed through the INS computer database that an individual with Garcia-Martinez's asserted name and date of birth had been deported. He then placed Garcia-Martinez under administrative arrest, served him with a Notice of Intent to Reinstate Prior Order of Deportation, and took him into INS custody.

The following day, December 29, Adkins ordered Garcia-Martinez's "A-file" from an INS records center in New Orleans, Louisiana. Adkins testified that the A-file was Garcia-Martinez's original immigration file and that it would contain his prior deportation order, his warrant of deportation, a certified copy of his prior conviction, his fingerprints, and other documents reflecting the procedures that were followed during his prior deportation. Adkins also testified that obtaining the A-file, rather than using Garcia-Martinez's temporary "T-file," was necessary to determine whether Garcia-Martinez could be prosecuted for reentry or whether, if the original deportation was deemed defective, the INS would have to "go the administrative route and deport him all over again." The A-file arrived on January 13, 1999, sixteen days after Adkins ordered it. Adkins reviewed the file, determined that referral for prosecution was appropriate, contacted the United States Attorney's Office sometime between January 13 and 15, and met with the prosecutor sometime between

January 17 and 19.

On January 25, 1999, the government filed a criminal complaint against Garcia-Martinez in the United States District Court for the District of Rhode Island. It charged him with unlawful reentry in violation of § 1326 and falsely claiming to be a United States citizen in violation of 18 U.S.C. § 911. Garcia-Martinez was arrested and brought before a magistrate judge for an initial appearance on January 28, 1999. At that point he was placed into the custody of the United States Marshal Service.

On February 17, 1999, a grand jury returned a one-count indictment charging Garcia-Martinez with illegal reentry. His first attorney withdrew on April 6, 1999, and the court appointed a second attorney. On September 7, 1999, Garcia-Martinez entered an unconditional plea of guilty. On December 3, 1999, he filed a pro se motion to dismiss the indictment, arguing that because the government failed to indict him within thirty days of his initial civil arrest on December 28, 1998, his February 17, 1999, indictment was untimely under the STA. On January 11, 2000, Garcia-Martinez's second attorney filed a motion to dismiss the indictment with prejudice and to allow Garcia-Martinez to withdraw his guilty plea under Federal Rule of Criminal Procedure 32(e) on the ground that Garcia-Martinez's first attorney had been incompetent in failing to raise the STA issue. After holding two hearings, the court issued a bench decision on March 7, 2000, denying

-4-

the motion. On June 9, 2000, Garcia-Martinez was sentenced to a term of sixty-four months.

The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

**DISCUSSION**

Garcia-Martinez raises two issues in support of his appeal: (1) that the indictment should be dismissed--and his guilty plea set aside--because the government violated the STA by failing to indict him within thirty days of his civil arrest, and (2) that his counsel was ineffective in failing to adequately investigate the INS policies and practices regarding the detention of illegal aliens. Because we find the first contention to be without merit, we do not need to reach the second.

When a motion to withdraw is made before sentencing, "the court may permit the plea to be withdrawn if the defendant shows any fair and just reason." Fed. R. Crim. P. 32(e). In the usual case, the crux of the inquiry is whether the plea was knowing, voluntary, and intelligent in conformity with Rule 11. See United States v. Martinez-Molina, 64 F.3d 719, 732 (1st Cir. 1995); United States v. Cotal-Crespo, 47 F.3d 1, 3 (1st Cir. 1995). Garcia-Martinez, however, does not challenge the plea procedure; rather, his contention is that his plea was invalid because the indictment was returned in violation of the STA. Thus, our review is for legal error. See Martinez-Molina,

64 F.3d at 732 ("*Other than for errors of law*, we will overturn the trial judge's decision to deny a motion to withdraw a guilty plea only for 'demonstrable abuse of discretion.'") (citation omitted) (emphasis added).

Initially, the government contends that by unconditionally pleading guilty Garcia-Martinez has waived any STA claim. While some circuits have held that an unconditional guilty plea precludes a defendant from raising an STA claim, we have not yet spoken on that issue. See Acha v. United States, 910 F.2d 28, 30 (1st Cir. 1990). We find it unnecessary to rule on the issue here because Garcia-Martinez's substantive claim lacks merit.

The STA states that "[a]ny . . . indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested . . . in connection with such charges." 18 U.S.C. § 3161(b). It further provides that "[i]f, in the case of any individual against whom a complaint has been filed charging such individual with an offense, no indictment . . . is filed within the time limit required by section 3161(b) . . . such charge against that individual contained in such complaint shall be dismissed or otherwise dropped." 18 U.S.C. § 3162(a)(1). The STA applies only to federal criminal prosecutions, and the time limit is triggered only by an arrest "in connection with [a criminal] charge[]." 18 U.S.C. § 3161(b). All of the circuits that

have considered the issue have concluded that an arrest on civil charges does not normally trigger the thirty-day clock under the STA. See, e.g., United States v. Cepeda-Luna, 989 F.2d 353, 356-58 (9th Cir. 1993) (STA not triggered when defendant detained on civil charges by INS); see also United States v. Noel, 231 F.3d 833, 836 (11th Cir. 2000) (collecting cases). Cf. United States v. Chapman, 954 F.2d 1352, 1358 n.8 (7th Cir. 1992) (STA not triggered when defendant arrested by state officers and questioned by federal officers); United States v. Blackmon, 874 F.2d 378, 381-82 (6th Cir. 1989) (same); United States v. Taylor, 814 F.2d 172, 174-75 (5th Cir. 1987) (STA not triggered when defendant arrested by state officers on state charges even though federal detainer had been lodged); United States v. Bell, 833 F.2d 272, 277 (11th Cir. 1987) (STA not triggered when defendant arrested by state authorities on state charges although in a joint state-federal investigation). We find the reasoning of these cases persuasive and hold that an arrest on civil charges by the INS ordinarily does not trigger the STA when criminal charges are filed later.

Garcia-Martinez argues that the indictment was untimely because the INS unreasonably delayed its decision whether to deport or prosecute him. See United States v. Restrepo, 59 F. Supp. 2d 133 (D. Mass. 1999); United States v. Pena, 73 F. Supp. 2d 56 (D. Mass. 1999). He would have the STA triggered by an INS arrest whenever the INS detains an alien longer than is necessary to effectuate a deportation

in order to facilitate preparation of a criminal case against him relating to the conduct for which he was arrested civilly. He argues that when he admitted on December 28, 1998, that he was a previous deportee and Adkins served him with the Notice of Intent to Reinstate Prior Order of Deportation, the INS could have deported him, by Adkins' own estimate, within two weeks of that date. He also points to another form issued that day, the Record of Deportable/Inadmissible Alien, which states that "Subject [is] to be presented for prosecution to the United States Attorney's Office (8 U.S.C. 1326, 18 U.S.C. 911)," as proof that Adkins' explanation of the delay--the need to track down Garcia-Martinez's A-file--was a pretext for detaining him to prepare the case for prosecution. Accordingly, Garcia-Martinez argues, he was arrested "in connection with" the later federal charges on December 28, 1998. See United States v. Vasquez-Escobar, 30 F. Supp. 2d 1364 (M.D. Fla. 1998) (defendant's detention for five months between initial INS civil arrest and subsequent indictment for violating § 1326 violated the STA where government admitted that it held him not to effectuate deportation, but solely to provide it time to establish a § 1326 violation).

We reject the argument. We agree with the position taken by all of the courts of appeals that have addressed the issue that a civil arrest by the INS does not trigger the STA in the absence of collusion or evidence that the detention was for the sole or primary purpose of

preparing for criminal prosecution.  See United States v. Cepeda-Luna, 989 F.2d at 354 (stating that the STA may be triggered by a civil arrest "in cases of collusion between Immigration and Naturalization officials and criminal authorities, where the civil detention is merely a ruse to avoid the requirements of the Speedy Trial Act"); see also United States v. Drummond, 240 F.3d 1333, 1336 (11th Cir. 2001) (STA triggered only where defendant demonstrates that primary or exclusive purpose of civil detention was to hold him for future criminal prosecution); United States v. De La Pena-Juarez, 214 F.3d 594, 598 (5th Cir. 2000) (same); United States v. Granjales-Montoya, 117 F.3d 356, 366 (8th Cir. 1997) (STA applies to civil deportation proceedings when federal officials, solely to evade the act, have colluded with civil authorities to detain a defendant pending federal criminal charges).

Garcia-Martinez does not claim that there was collusion.  Nor does he argue that he was arrested for prosecutorial purposes.  See De La Pena-Juarez, 214 F.3d at 599.  He argues instead that the INS never intended to deport him and thus held him only for criminal prosecution. But the form signed on December 28, 1998, by Adkins, the Record of Deportable/Inadmissible Alien, states that Garcia-Martinez was to be detained pending prosecution *or* removal.  The district court found that because the INS on December 28, 1998, had only the computer information, which could be erroneous, it could make no decision on

whether Garcia-Martinez was deportable and whether he should be turned over to the United States Attorney without verifying its information by obtaining the A-file. The file was promptly ordered and was reviewed immediately on receipt by INS officials. Within a day or two, it turned the file over to the United States Attorney. The criminal complaint was filed a few days later and Garcia-Martinez was arraigned and taken into the Marshal's custody. This record refutes Garcia-Martinez's claim. While we certainly do not condone indefinite detention of an alien by the INS, we are constrained by the terms of the STA, which has no application to detention unless it follows a criminal arrest or its functional equivalent.

Accordingly, because Garcia-Martinez was not arrested for purposes of the STA until January 28, 1999, when he made his initial appearance on federal charges and was taken into the custody of the Marshal, his February 17, 1999, indictment was timely, and the district court's denial of the motion to withdraw his guilty plea was correct. Because the alleged ineffective assistance of counsel in failing to investigate the policies and practices of the INS for detention and deportation has no bearing on the disposition of the motion to withdraw the plea, we do not consider this claim.

AFFIRMED.