

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-18-2003

# USA v. Dyer

Precedential or Non-Precedential: Precedential

Docket 02-1046

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Dyer" (2003). *2003 Decisions.* Paper 578.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/578

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed April 18, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-1046

UNITED STATES OF AMERICA

v.

WINSTON DYER,

Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 00-cr-00702-1)
District Judge: Honorable Robert F. Kelly

Argued on January 14, 2003

Before: ROTH, FUENTES and ALDISERT, *Circuit Judges*

(Opinion filed April 18, 2003)

Robert A. Zauzmer, Esquire (Argued)
Floyd J. Miller, Esquire
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

*Counsel for Appellee*

Robert Epstein, Esquire (Argued)
Federal Court Division
Curtis Center, Independence
Square West, Suite 540 West
Philadelphia, PA 191076

*Counsel for Appellant*

---

## OPINION OF THE COURT

---

ROTH, *Circuit Judge*:

Defendant Winston Dyer appeals his judgment of conviction for unlawful reentry into the United States after a previous deportation in violation of 8 U.S.C. § 1326. He argues that the District Court erred in denying his motion to dismiss the indictment under the Speedy Trial Act, 18 U.S.C. § 3161(b) and Fed. R. Crim. P. 5(a), and in failing to indicate the reasons for its denial of his request for a downward departure. For the reasons stated below, we will affirm.

### I. Facts and Procedural History

Dyer, a Jamaican national, legally entered the United States on December 15, 1987. In 1988, he was arrested by the Philadelphia Police Department with sixty-one packets of cocaine, a small amount of marijuana, and a firearm. Following conviction, the Court of Common Pleas of Philadelphia County sentenced Dyer on September 18, 1989, to two to four years imprisonment for delivery of a controlled substance (cocaine), and two years probation for simple assault. On January 25, 1992, as a result of this conviction, the Immigration and Naturalization Service (INS) ordered Dyer deported. Dyer was deported and subsequently reentered the United States without permission from the United States Attorney General.

On October 18, 2000, INS Special Agent Patrick McCall encountered Dyer at 6404 Rising Sun Avenue in Philadelphia. Agent McCall was at that address with a member of the Baltimore City Police Department to arrest a female Jamaican national in a matter not involving Dyer. Upon entering the building, Agent McCall encountered Dyer, along with another Jamaican national, in the basement. Agent McCall identified himself as a special agent with the INS and asked Dyer about his citizenship. Dyer responded that he was a citizen of Jamaica and provided Agent McCall with an alien registration card. A

computer verification check of the card revealed that Dyer had previously been deported because of a drug distribution conviction. Dyer admitted the deportation and the drug conviction. Dyer also admitted a marijuana conviction. Agent McCall presented Dyer with a Reinstatement of Deportation Notice, which reinstated his former warrant of deportation. According to Agent McCall, Dyer was taken into custody for two reasons. First, Dyer admitted that he was currently on probation in the City of Philadelphia for a marijuana conviction, a status which would make him deportable. Second, the INS duty agent informed Agent McCall that Dyer had a conviction in the City of Philadelphia for delivery of cocaine for which he had served one to three years.

The following day, October 19, Agent McCall contacted the United States Attorney's Office "[f]or criminal prosecution for reentry after deportation." The United States Attorney's Office did not respond to Agent McCall until October 24. On October 25, Agent McCall compared the fingerprints of the individual sentenced on September 18, 1989, for delivery of a controlled substance with the fingerprints obtained from Dyer on October 18. The result of the comparison convinced Agent McCall that Dyer was the same individual who previously had been convicted of cocaine distribution. On October 26, Agent McCall obtained a Certificate of Nonexistence of Records, which showed no record that Dyer had ever applied to the United States Attorney General for permission to reenter the United States following his initial deportation. In a report dated November 2, Agent McCall recommended that Dyer be prosecuted for illegal reentry. On November 3, the United States Attorney's Office accepted the case for prosecution.

Dyer was indicted on November 28, 2000, for illegal reentry after deportation without the Attorney General's permission in violation of 8 U.S.C. § 1326. Dyer moved to dismiss the indictment pursuant to the Speedy Trial Act. The District Court held a hearing, at which Agent McCall testified that an individual who illegally reenters the United States can be either prosecuted or deported without prosecution. While most illegal reentry cases are prosecuted, some are not, usually because paperwork was

not properly filed or documents are missing from the file. Agent McCall testified that he handles criminal and administrative matters at INS and that there is a separate deportation section. When an illegal reentrant is deported without prosecution, the deportation section, not the criminal and administrative section, arranges the deportation.

Agent McCall testified at the Speedy Trial Act hearing that, once Dyer was taken into custody, the deportation section was notified. Before the deportation section could deport Dyer, it had to contact the Jamaican consulate in order to obtain travel documents. Agent McCall testified that he was aware that it typically takes six months to deport someone to Jamaica. However, he was not familiar with the procedures followed by the deportation section, and, while he was investigating whether to recommend criminal prosecution or deportation without prosecution, he did not know what steps, if any, the deportation section was taking to arrange for Dyer's deportation.

Agent McCall admitted that, at some time subsequent to the filing of the indictment, he became aware that the deportation section never obtained travel documents because this case became a criminal matter. On redirect examination, the following exchange occurred:

Q Okay. And the reason those documents were never requested by the INS is because this was a criminal matter that would then later on after the completion of a sentence or prosecution, then you would initiate the deportation procedure by asking for those papers, correct?

A Correct.

Q And that hasn't been done because this is a criminal matter?

A Yes.

****

The Court: Do you know that those documents weren't requested?

The Witness: Yes, Your Honor. He has not been formerly presented to the Jamaican consulate for travel documents.

Agent McCall also admitted that, shortly after taking Dyer into custody, he subjectively came to believe that this case was a criminal matter. Agent McCall testified that, while he intended that Dyer be deported at the time he gave Dyer the Reinstatement of Deportation Notice, by the following day, he considered this case a criminal matter. During redirect examination by Dyer's attorney, the following exchange took place:

Q   And [this case] has always in your mind been a criminal matter?

A   It was a criminal matter on October 19th when I presented it to the U.S. Attorney's Office.

However, even though Agent McCall had subjectively thought this case might be a criminal matter since October 19, 2000, the case did not actually become a criminal matter until later. Agent McCall testified that "I thought it was a criminal matter [shortly after Dyer was taken into custody, but] it didn't become a criminal matter until all the elements were received, one of which was the certification, no permission to reenter the United States, which I received on the 26th of October."

Following the Speedy Trial Act hearing, the District Court denied the motion to dismiss. Dyer pled guilty but expressly reserved the right to appeal the District Court's denial of his Speedy Trial Act motion.

On January 4, 2002, Dyer was sentenced to 41 months imprisonment, which is at the bottom of the U.S. Sentencing Guidelines range. At sentencing, Dyer's attorney made the following statement on Dyer's behalf:

He received a conviction a dozen years ago and he came back in the country to work in a legal sense. He was here illegally, but he was working in a legal sense.

It's something that the Court may consider, whether this case falls within the heartland of whether or not these laws were appropriate to Mr. Dyer, the ones that

> are so — in his sense they seem draconian because he comes back here to work and not to conduct himself in an illegal manner, and that's why he's getting a sentence which is 200 percent greater than would otherwise be received, because we don't want people [to] come in here and ply in illegal trade.
>
> But Mr. Dyer was not here to ply in illegal trade. He was here to work, albeit he was here illegally. I think that the Court should take that into consideration when sentencing, and if the Court did find that it was outside of the heartland of cases that we wish to approach with this 200 percent increase, I believe the Court is able to fashion a sentence below those Guidelines.
>
> If the Court does not decide to do that, we would certainly ask the Court to sentence Mr. Dyer to at least at the bottom of the Guidelines, which is 41 months.

When Dyer addressed the sentencing judge directly, he stated that he thought he could return to the United States four or five years after his deportation. The sentencing judge then imposed sentence, without addressing the appropriateness of a downward departure. Dyer did not object at the sentencing hearing to the judge's failure to address the issue of departure. Dyer timely filed a notice of appeal.

## II.  Jurisdiction and Standard of Review

The District Court had jurisdiction over this criminal case involving offenses against the laws of the United States pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. The District Court's construction of the statutory provisions of the Speedy Trial Act and Rule 5(a) are subject to plenary review. We review the District Court's conclusions of fact for clear error. *United States v. Lattany*, 982 F.2d 866, 870 (3d Cir. 1992). As for the failure to address the downward departure, which was not objected to, we review unpreserved challenges for plain error. *See e.g. United States v. Vonn*, 535 U.S. 55 (2002).

### III.   Discussion

**A.   Speedy Trial Act**

The Speedy Trial Act requires that, "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). If the government fails to comply with this time limit, the Speedy Trial Act requires the dismissal of charges in the complaint, with or without prejudice. 18 U.S.C. § 3162(a)(1) ("If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped."); *see also United States v. Oliver*, 238 F.3d 471, 473 (3d Cir. 2001).

In this case, Agent McCall took Dyer into custody pursuant to civil authority. It is undisputed that Agent McCall came across Dyer by chance, while investigating an unrelated matter. He was not acting pursuant to an arrest warrant when he arrested Dyer, and he did not intend to arrest him when he went to 6404 Rising Sun Avenue. Rather, when Agent McCall took Dyer into custody, he gave Dyer a Reinstatement of Deportation Notice, which indicated that Agent McCall was detaining Dyer pursuant to civil authority. This Court has not addressed the issue of whether a civil detention triggers the Speedy Trial Act's thirty day time limit. According to the language of the Act, it applies only to an indictment issued in connection with the "offense" for which the defendant was "arrested." 18 U.S.C. § 3161(a)(1). The Act defines "offense" as a criminal offense. 18 U.S.C. § 3172(2). For that reason, we will follow the other Courts of Appeals that have considered the issue and hold that a civil detention, including INS civil detention, does not trigger the Speedy Trial Act's thirty day time limit. *See United States v. Garcia-Martinez*, 254 F.3d 16, 19 (1st Cir. 2001); *United States v. De La Pena-Juarez*, 214 F.3d 594, 597 (5th Cir.), *cert. denied*, 531 U.S. 983 (2000); *United States v. Grajales-Montoya*, 117 F.3d 356,

366 (8th Cir.)*, cert. denied*, 522 U.S. 1007 (1997); *United States v. Cepeda-Luna*, 989 F.2d 353, 355-56 (9th Cir. 1993); *United States v. Noel*, 231 F.3d 833, 836 (11th Cir. 2000), *cert. denied*, 531 U.S. 1200 (2001).

Dyer does not contest that civil detention by the INS generally does not trigger the Speedy Trial Act's thirty day time limit or that he was taken into custody pursuant to civil authority. Rather, he argues that, in this case, the Speedy Trial Act's time limit began to run when the INS took him into custody under the "ruse exception" recognized by some Courts of Appeals. *See Garcia-Martinez*, 254 F.3d at 20; *De La Pena-Juarez*, 214 F.3d at 598-99; *Cepeda-Luna*, 989 F.2d at 357-58; *Noel*, 231 F.3d at 836. We do not at this time need to decide whether to recognize the ruse exception. Even if we were to conclude that the exception is a valid one, Dyer has not shown that he would be entitled to invoke it under the circumstances of this case. *See Grajales-Montoya*, 117 F.3d at 366 (declining to reach the issue of whether to recognize the ruse exception because a defendant clearly did not qualify for the exception).

Under the ruse exception, a civil detention triggers the Speedy Trial Act's time limit when federal criminal officials collude with civil authorities to detain an individual pending criminal charges, such that the primary or exclusive purpose of civil detention is to hold the individual for future prosecution. *See Garcia-Martinez*, 254 F.3d at 20; *De La Pena-Juarez*, 214 F.3d at 598-99; *Grajales-Montoya*, 117 F.3d at 366; *Cepeda-Luna*, 989 F.2d at 357-58; *Noel*, 231 F.3d at 836. Dyer cites District Court cases which suggest that the ruse exception applies when the INS holds an illegal reentrant while it investigates and decides whether the reentrant should be prosecuted or deported without prosecution. *See United States v. Vasquez-Escobar*, 30 F. Supp. 2d 1364, 1367 (M.D. Fla. 1998); *United States v. Pena*, 73 F. Supp. 2d 56, 59 (D. Mass. 1999); *United States v. Okuda*, 675 F. Supp. 1552, 1554-55 (D. Haw. 1987); *United States v. Osunde*, 638 F. Supp. 171, 174 (N.D. Cal. 1986). However, subsequent cases from the Courts of Appeals make it clear that the Speedy Trial Act's time limit is not triggered by the fact that the INS is

conducting a reasonable investigation in order to decide whether the reentrant should be prosecuted or deported without prosecution. *Garcia-Martinez*, 254 F.3d at 19-20; *United States v. Drummond*, 240 F.3d 1333, 1336 (11th Cir. 2001).

In this case, Agent McCall conducted a prompt investigation to determine whether Dyer should be prosecuted or deported without prosecution. The day after taking Dyer into custody, Agent McCall contacted the United States Attorney's Office to inform officials there that Dyer might be eligible for prosecution for reentry after deportation. Within a week of detention, Agent McCall had determined, based on a fingerprint comparison, that Dyer had been convicted of a drug distribution crime and deported for that crime. The following day, Agent McCall obtained a Certificate of Nonexistence of Records, which showed no record that Dyer had ever applied to the United States Attorney General to reenter the United States. It was only at this point, according to Agent McCall's testimony, that there was a sufficient basis to conclude that Dyer could be prosecuted for illegal reentry. The following week, on November 2, Agent McCall prepared a report recommending that Dyer be prosecuted for illegal reentry. The day after Agent McCall prepared this report, the United States Attorney's Office accepted the case for prosecution. Dyer was indicted on November 28. Thus, within 15 days of taking Dyer into civil detention, the INS came to the conclusion that there was a sufficient basis to prosecute rather than deport him; within 16 days of civil detention, the United States Attorney's Office accepted the case for prosecution; and within 41 days of civil detention Dyer was indicted. We conclude that this prompt handling of Dyer's case by Agent McCall would not invoke the ruse exception even if we were to adopt it. *See Noel*, 231 F.3d at 837 (holding that the passage of 39 days from the date of civil detention to indictment did not suggest that the detention was a ruse).[1]

---

1. Dyer argues that the INS did not need to conduct an investigation into whether he should be prosecuted or deported without prosecution because he confessed that he had illegally reentered the country when

Dyer makes much of the fact that Agent McCall contacted the United States Attorney's Office the day after Dyer was in custody to inform the United States Attorney's Office that Dyer might be subject to criminal prosecution. However, "the fact that federal [criminal law enforcement] officials are aware of, and perhaps slightly involved in, the deportation proceedings . . . would not establish, as a matter of law, the requisite collusion." *Grajales-Montoya*, 117 F.3d at 366-67; *see also De La Pena-Juarez*, 214 F.3d at 600 ("The fact that federal criminal authorities might have known about [a person]'s detention . . . does not necessarily support a conclusion that they colluded with the INS to detain" that person); *Garcia-Martinez*, 254 F.3d at 18, 20 (holding that there was no evidence of collusion, or that the sole or primary purpose of detention was to prepare for criminal prosecution, even though INS officials contacted the United States Attorney's Office to refer a case for criminal prosecution more than thirty days prior to the issuing of an indictment).

Nor does the fact that Agent McCall subjectively believed that this could be a criminal matter when he contacted the United States Attorney's Office qualify this case for the ruse exception. In *United States v. Seals*, the Court of Appeals for the District of Columbia recognized that the Speedy Trial Act's time limit is not triggered because an investigating official contemplates filing federal criminal charges against a person who is in a type of detention that does not otherwise trigger the Speedy Trial Act's time limit. *See* 130 F.3d 451, 455 (D.C. Cir. 1998) (holding that the Speedy Trial Act's time limit is not triggered when a person is taken into state custody, and the fact that federal officials involved in the state arrest intended to bring federal charges did not qualify the state detention for the ruse exception articulated in *Cepeda-Luna*).

---

Agent McCall took him into custody. However, this confession was not a sufficient basis upon which to decide whether Dyer should be prosecuted or deported without prosecution, and it was more than reasonable for Agent McCall to verify Dyer's claims. See Garcia-Martinez, 254 F.3d at 20 (holding that INS investigators acted with reasonable diligence by verifying information contained in a computer database, which could have been erroneous).

In summary, because Dyer's initial detention by Agent McCall was civil, not criminal, the Speedy Trial Act was not implicated during the period that Dyer was in INS custody. We need look no further.

## B. Federal Rule of Criminal Procedure 5(a)

Moreover, since Dyer was under civil detention rather than criminal arrest, his claim that the government violated Fed. R. Crim. P. 5(a) by not bringing him before a Magistrate Judge within a reasonable time of his detention lacks merit. Fed. R. Crim. P. 5(a) requires that a defendant who is arrested be brought before a Magistrate Judge "without unnecessary delay." However, Fed. R. Crim. P. 5(a) only applies to criminal arrests, it does not apply to INS civil detention. *See Cepeda-Luna*, 989 F.2d at 358; *see also United States v. Tejada*, 255 F.3d 1, 3-4 (1st Cir.), *cert. denied*, 534 U.S. 1068 (2001). In this case, as discussed above, Agent McCall placed Dyer under INS civil detention, not criminal arrest, on October 18. Dyer was not under criminal arrest prior to his indictment. Thus, a preliminary hearing pursuant to Fed. R. Crim. P. 5(a) was not required because "the purpose of a preliminary hearing [pursuant to Fed. R. Crim. P. 5(a)] is to afford an arrested person a prompt determination as to whether there is probable cause to hold him for grand jury action. . . . *This purpose is served, and the hearing rendered unnecessary, by the return of an indictment.*" *United States v. Dorsey*, 462 F.2d 361, 363 (3d Cir. 1972) (quotation omitted).[2]

## C. Downward Departure Motion

Dyer claims that this case is not within the heartland of the United States Sentencing Guidelines for the offense of illegal reentry because he had reentered the United States

---

2. Further, even if the government had violated Fed. R. Crim. P. 5(a), the remedy for such a violation is not dismissal of the indictment. Rather, since the provisions of Fed. R. Civ. P. 5(a) are procedural, not substantive, "the sanction imposed by federal courts for failure to comply with Rule 5(a) is suppression of statements taken during the period of 'unnecessary delay.'" *Govt. of the Virgin Islands v. Gereau*, 502 F.2d 914, 923 n. 5 (3d Cir. 1974). In the present case, Dyer does not seek to suppress any incriminating statements, so this remedy would be inapplicable.

to obtain legal employment and he thought he could reenter legally after four or five years from his deportation. As an initial matter, Dyer did not formally move for a departure. At sentencing, Dyer's attorney stated that:

> I think that the Court should take [the fact that this case was outside the heartland] into consideration when sentencing, and if the Court did find that it was outside of the heartland of cases . . . , I believe the Court is able to fashion a sentence below those Guidelines. If the Court does not decide to do that, we would certainly ask the Court to sentence Mr. Dyer to at least the bottom of the Guidelines . . . .

While his attorney did not use the "magic words" downward departure, he clearly was requesting such a departure. *United States v. Brannan*, 74 F.3d 448, 452 (3d Cir. 1996). Dyer's attorney did not, however, object when the District Court sentenced Dyer without making any reference to the request for departure.

Under these circumstances, there is no need to remand for clarification of the District Court's basis for denying this motion, even though the District Court did not indicate why, in effect, it did so. It is evident from the language of 8 U.S.C. § 1326 that the motive of the illegal entrant in reentering is irrelevant to the commission of the offense. We surmise that few illegal reentrants would admit that they reentered for any purpose other than a legal one. Indeed, a legal purpose for an illegal reentry has been held to be insufficient to warrant a downward departure. *See United States v. Abreu-Cabrera*, 64 F.3d 67, 76 (2d Cir. 1995) (holding that defendant who returned illegally to visit his family not entitled to a downward departure). Because it is clear from the record that this case does not fall outside of the heartland, no plain error was committed when the District Court did not grant a downward departure. We do not need to remand for further explanation. *See United States v. Mummert*, 34 F.3d 201, 205 (3d Cir. 1994).

## IV.   Conclusion

For the reasons stated above, the judgment of the District Court will be affirmed.

13

A True Copy:
         Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*