NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2038
_____

UNITED STATES OF AMERICA

v.

LAVAR BROWN,
              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-06-cr-00365-001)
District Judge:  Honorable Anita B. Brody
_____

Submitted Under Third Circuit LAR 34.1(a)
September 20, 2011

Before:  FISHER, HARDIMAN and GREENAWAY, JR., *Circuit Judges*.

(Filed: September 20, 2011)
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Lavar Brown appeals his conviction and sentence following a jury trial.  His

attorney has moved to withdraw under *Anders v. California*, 386 U.S. 738 (1967).  For

the reasons that follow, we will grant counsel's motion to withdraw and affirm the

District Court's judgment.

I

Because we write for the parties, we review only the essential facts and we do so in the light most favorable to the Government, as the verdict winner. *United States v. Hoffecker*, 530 F.3d 137, 146 (3d Cir. 2008).

On January 31, 2005, at approximately 11:20 a.m., Lavar Brown and an unnamed co-conspirator robbed the Nova Savings Bank in Wynnewood, Pennsylvania. Shortly thereafter, Officer Thomas Hollinger observed two men drive by in a gold vehicle. When Officer Hollinger attempted to stop the vehicle by activating his emergency lights and siren, the car accelerated and a high speed chase ensued. Moments later, Brown jumped out of the moving car and was pursued, on foot, by Officer Hollinger into an alley where he was apprehended. Brown was wearing black clothing and had a mask pulled down around his neck. The officer found a blue pillowcase containing money and a loaded .45 caliber semi-automatic pistol near the alleyway. Brown was arrested and brought to the police station for questioning. After waiving his Miranda rights, Brown gave three statements to police admitting his role in the bank robbery.

On February 1, 2005, Brown was charged by state authorities with theft by unlawful taking, receipt of stolen property, robbery, carrying a firearm without a license, recklessly endangering another person, and criminal conspiracy. On August 1, 2005, Brown filed a petition for writ of habeas corpus with the Court of Common Pleas of

2

Montgomery County, claiming that state officials failed to bring him to trial within the 180-day period mandated by Rule 600 of the Pennsylvania Rules of Criminal Procedure. Although Brown's petition was granted, he remained in state custody until July 20, 2006, when a federal grand jury returned a four-count indictment charging Brown with: conspiracy to commit armed bank robbery, in violation of 18 U.S.C. § 371; armed bank robbery, and aiding and abetting, in violation of 18 U.S.C. §§ 2113(d) and 2; carrying and using a firearm during and in relation to a crime of violence, and aiding and abetting, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2; and being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). After he was federally indicted, Brown's state charges were nolle prossed.

Prior to trial, Brown moved for a hearing to determine whether federal authorities were complicit in Pennsylvania's violation of his speedy trial rights. The Government responded that Brown's request was "absurd" and constituted "nothing more than an attempt to involve [the District Court] in his desperate efforts to avoid prosecution for the offenses that he is alleged to have committed." The District Court denied Brown's motion and scheduled his jury trial for October 18, 2006. Brown filed a series of unopposed motions for continuances, which resulted in his trial being delayed almost three years. At a pre-trial conference held on September 17, 2009, Brown's trial counsel, Christopher Phillips, indicated that he would not pursue a number of claims filed by Brown's former counsel, Timothy Susanin, including his claim for dismissal pursuant to

3

the Speedy Trial Act, 18 U.S.C. § 3161. App. 23-29. In response, Brown stated that he was dissatisfied with his counsel's performance because Phillips refused to listen to his "input" regarding trial strategy. App. at 107. The District Court explained that Phillips was permitted to "try the case . . . consistent with the rules of ethics," and found that Phillips's trial strategy did not violate any ethical rules. *Id.* Accordingly, the District Court agreed to engage in a colloquy with Brown and allowed him to proceed *pro se.* App. at 107-108; *see Faretta v. California*, 422 U.S. 806, 835 (1975). After further consideration, Brown opted to continue being represented by Phillips.

Brown's trial began on September 22, 2009. The Government presented the testimony of several police officers involved in the investigation, including Detective Charles Craig, who interrogated Brown following his arrest. Detective Craig admitted that Brown's statement to police describing his entry into the bank was inconsistent with a video recording of Brown's movements that morning. Craig also testified that while he stated in his initial reports that the weapon found in the blue pillowcase was a 9 mm handgun, the police actually found a .45 caliber handgun. Gary Fletcher, a bank teller at Nova Savings Bank, testified that although he could not "remember everything" from the robbery five years earlier, he could "[n]ever forget [Brown's] eyes." Supp. App. 38. During closing arguments, the Government described Fletcher's testimony as "strong" and asked the jury whether "a 31-year veteran, a detective, Charlie Craig, [would] risk the possibility of throwing [away] his entire career" by lying on the witness stand. Supp.

4

App. 455.

Prior to deliberating, the jury expressed concern that their personal information would be open to the public. Brown moved for a mistrial, stating that "this is a tainted jury and that [he] cannot get a fair [trial]." Supp. App. 359. The District Court denied Brown's motion, finding that the jury's concern has "nothing to do with this defendant." *Id.* The Court then assured members of the jury that their private information would be collected at the end of trial and that "no one else [would have] access to them." Supp. App. 362. The jury deliberated, and on October 1, 2009, returned guilty verdicts on counts one, two, three, and four of the indictment.

In a Presentence Investigation Report (PSR), the Probation Office designated Brown a career offender under United States Sentencing Guideline (USSG) § 4B1.1. Brown objected to the PSR's calculation of his criminal history category, claiming that his simple assault conviction in 1997 did not qualify as a "crime of violence" under § 4B1.2(a)(2). The District Court first recognized that Pennsylvania's simple assault statute criminalized both negligent and intentional conduct. To determine whether Brown's offense fell into the latter category—and thus qualified as a "crime of violence" under § 4B1.2(a)(2)—the Court considered a transcript from Brown's sentencing colloquy, where he admitted to "pulling out [his] gun and pointing it" at a victim. Finding this sufficient evidence of Brown's "attempt to cause bodily injury," the District Court accepted the PSR's calculation of Brown's criminal history category and sentenced him to 300 months

5

in prison, followed by a five-year term of supervised release.  App. 43-47.

Brown filed a timely notice of appeal of the District Court's judgment.  Counsel now seeks to withdraw pursuant to *Anders*, asserting that there are no non-frivolous issues for appeal.  Brown has filed a *pro se* brief in opposition to counsel's brief.  The Government has filed a brief supporting counsel's *Anders* motion.

II[1]

We exercise plenary review over an *Anders* motion.  *See Penson v. Ohio*, 488 U.S. 75, 82-83 & n.6 (1988).  Under *Anders*, our inquiry is two-fold: (1) whether counsel adequately fulfilled the requirements of Third Circuit Local Appellate Rule 109.2(a); and (2) whether an independent review of the record presents any non-frivolous issues. *United States v. Coleman*, 575 F.3d 316, 319 (3d Cir. 2009).

The first prong requires counsel "to satisfy the court that [he] has thoroughly examined the record in search of appealable issues, and . . . explain[ed] why the issues are frivolous."  *United States v. Youla*, 241 F.3d 296, 300 (3d Cir. 2001).  Counsel need not raise and reject every possible claim; rather, he must "provide[] sufficient indicia that he thoroughly searched the record and the law in service of his client so that we might confidently consider only those objections raised."  *Id*. (quoting *United States v. Marvin*, 211 F.3d 778, 781 (3d Cir. 2000)).  "Where the *Anders* brief initially appears adequate on

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231.  We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

its face, the proper course 'is for the appellate court to be guided in reviewing the record by the *Anders* brief itself,'" as well as issues raised in a defendant's *pro se* brief. *Id.* at 301 (quoting *Marvin*, 211 F.3d at 553). On the other hand, if we "find[] arguable merit to the appeal, or that the *Anders* brief is inadequate to assist the court in its review, [we] will appoint substitute counsel, order supplemental briefing and restore the case to the calendar." 3d Cir. L.A.R. 109.2(a). However, "we will not appoint new counsel even if an *Anders* brief is insufficient to discharge current counsel's obligations to his or her client and this court" if the "frivolousness [of the appeal] is patent." *Coleman*, 575 F.3d at 321 (quoting *Marvin*, 211 F.3d at 781) (internal quotation marks omitted).

In his *Anders* brief, Brown's counsel identifies four potential issues for appeal and attempts to explain why each is frivolous. Counsel argues that: (1) Brown's rights under the Speedy Trial Act were not violated because Brown filed a number of unopposed motions for continuances and had "adequate time for trial preparation," *Anders* Br. at 13; (2) Brown "never expressed dissatisfaction with his attorney," *id.* at 16, and thus it was not an abuse of discretion for the District Court not to appoint new counsel; (3) the District Court accurately calculated Brown's criminal history category; and (4) Brown's within-Guidelines sentence was substantively reasonable. The Government supplements counsel's *Anders* brief by arguing that a prosecutor does not improperly vouch for a police officer by instructing the jury to make common sense inferences about a police officer's willingness to lie on the stand. Finally, the Government argues that the District

7

Court did not abuse its discretion by refusing to order a mistrial when jurors expressed concern about their privacy prior to deliberations.

We will consider each of these arguments in turn.

### A

In his *Anders* brief, defense counsel argues that Brown has no viable Speedy Trial Act claim, because it was Brown—and not the Government—who repeatedly sought to continue his trial. The Government agrees, noting that "the right to a speedy trial essentially protects defendants against delays *caused by the government*. If the delay is attributable exclusively to the defendant, he will be deemed to have waived his speedy trial rights entirely." Gov't Br. at 19 (citing *Gattis v. Snyder*, 278 F.3d 222, 231 (3d Cir. 2002) (citations and internal quotation marks omitted)).

We agree that Brown has no basis to appeal the Government's three-year delay in bringing this case to trial. However, what Brown's counsel and the Government do not explain is why federal authorities waited a year and a half after Brown was arrested by state police to federally indict him. Given that Brown raised this argument in his motion to dismiss, we are surprised that counsel failed to address it after "scouring the record" for potential claims. Because counsel's *Anders* brief does not adequately consider the issue, we must determine whether Brown's Speedy Trial Act claim is "patently frivolous" or contains arguable merit on appeal. *Coleman*, 575 F.3d at 321.

The Speedy Trial Act requires federal authorities to indict an incarcerated

individual "within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."  18 U.S.C. § 3161(b).  Failure to comply with the time limits of the Act results in dismissal of charges.  *See* 18 U.S.C. § 3162(a)(1) ("If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.").

Although the Speedy Trial Act's thirty-day clock normally begins to run at the time of a federal arrest, in *United States v. Cepeda-Luna*, 989 F.2d 353 (9th Cir. 1993), the Court of Appeals for the Ninth Circuit recognized that the Speedy Trial Act "would lose all meaning if federal criminal authorities could collude with civil or state officials to have those authorities detain a defendant pending federal criminal charges solely for the purpose of bypassing the requirements of the Speedy Trial Act."  *Id.* at 357.  Thus, the Ninth Circuit held that the thirty-day clock may begin to run when a person is detained by state or civil authorities if the detention is a "mere ruse[] to detain a defendant for later criminal prosecution."  *Id.*; *accord United States v. Garcia-Martinez*, 254 F.3d 16, 19 (1st Cir. 2001); *United States v. De La Pena-Juarez*, 214 F.3d 594, 597 (5th Cir. 2000), *cert. denied*, 531 U.S. 983 (2000); *United States v. Grajales-Montoya*, 117 F.3d 356, 366 (8th Cir. 1997), *cert. denied*, 522 U.S. 1007 (1997); *United States v. Noel*, 231 F.3d 833, 836

9

(11th Cir. 2000), *cert. denied*, 531 U.S. 1200 (2001).

Our Circuit has yet to recognize a "ruse exception" to the Speedy Trial Act's federal arrest requirement. *United States v. Dyer*, 325 F.3d 464, 468 (3d Cir. 2003) (declining to reach the issue when a defendant clearly did not qualify for the exception). We have stated, however, that even if such an exception exists, we will apply it only where there is evidence of "collusion, or that the sole or primary purpose of detention was to prepare for criminal prosecution." *Id.* (citing *Garcia-Martinez*, 254 F.3d at 18, 20). As evidence of collusion, Brown cites the lengthy delay between his arrest by state authorities and his transfer to federal custody. Brown also notes Detective Craig's testimony that "once [Brown] was in custody and [Craig] had the statement, . . . [local police] turned this investigation over to the FBI." Reply Br. 1-2 (citing App. 427).

Contrary to Brown's argument, an arrest is not necessarily federal merely because federal agents and state officers cooperate with one another or because the state prosecution does not proceed apace. As the Ninth Circuit recognized, when a state prosecutor intends in good faith to proceed to trial, *United States v. Benitez*, 34 F.3d 1489, 1495 (9th Cir. 1994), we cannot hold that "the *sole* or primary purpose of [a defendant's] detention was to prepare" a federal case. *Dyer*, 325 F.3d at 469 (emphasis added) (citing *Garcia-Martinez*, 254 F.3d at 18, 20). Here, the Government submitted all the court documents from the Montgomery County District Attorney's Office to Brown's counsel prior to trial. App. 29. Nevertheless, Brown failed to cite evidence in his pre-

trial motion indicating that federal authorities knew about, or were complicit in, the state's speedy trial violation. Because a defendant seeking an evidentiary hearing "must allege facts, sufficiently definite, specific, detailed and nonconjectural, to enable the court to conclude that a substantial claim is presented," *United States v. Lewis*, 40 F.3d 1325, 1332 (1st Cir. 1994) (citations and internal quotation marks omitted), the District Court did not err in refusing to conduct an evidentiary hearing on this issue.

For this reason, we find that Brown's Speedy Trial Act claim is "patently frivolous," and that counsel's failure to raise it in his *Anders* brief does not require the appointment of new counsel. 3d Cir. L.A.R. 109.2(a).

B

Brown presents four other arguments challenging the District Court's judgment of conviction. Because we find these issues meritless, we will address them only briefly.

Brown first contends that his trial counsel, Christopher Phillips, was ineffective in refusing to pursue the arguments contained in Brown's motion to dismiss. As the Government argues, however, Sixth Amendment claims of ineffective assistance of counsel should ordinarily be raised in a collateral proceeding pursuant to 28 U.S.C. § 2255 rather than on direct appeal. *United States v. Jake*, 281 F.3d 123, 132 n.7 (3d Cir. 2002) (dismissing a defendant's ineffectiveness claim on direct appeal where the record did not reflect a "readily apparent conflict of interest" between a defendant and his counsel) (citing *Gov't of the Virgin Islands v. Zepp*, 748 F.2d 125, 133-34 (3d Cir. 1984)).

11

Moreover, while a Sixth Amendment violation may arise if the record shows that a district court "clearly erred" in finding that a defendant did not show "good cause" for his request to substitute counsel or "made no inquiry into the reason for a defendant's request," *United States v. Goldberg*, 67 F.3d 1092, 1098 (3d Cir. 1995), we find that the District Court here sufficiently investigated Brown's dissatisfaction with counsel and did not "clearly err" in finding that his disagreement with Phillips' trial strategy did not give rise to a "conflict of interest, a complete breakdown of communication, or an irreconcilable conflict with the attorney." *Id.* Thus, we find no basis to appeal his conviction on this ground.

Brown also claims the Government improperly "solicit[ed] false evidence" and "allowed false evidence to go uncorrected" when it presented Detective Craig's and Fletcher's testimony, knowing that Craig testified inconsistently about Brown's gun and his statements to police, and knowing that Fletcher admitted that he did not remember all the details of the robbery. Reply Br. at 3 (citing *Hayes v. Brown*, 399 F.3d 972 (9th Cir. 2005)). The Government does not violate its ethical duties by failing to elicit or correct every inconsistency in a witness's testimony. Nor does the Government improperly vouch for its witnesses by characterizing an eyewitness's testimony as "strong" and by suggesting that a detective would not risk his reputation as a veteran police officer by lying on the stand. *United States v. Weatherly*, 525 F.3d 265, 271 n.7 (3d Cir. 2008) (describing this "common sense" statement as "the kind of effective and logical response

12

to an attack on an agent's credibility that has been made in countless numbers of closing arguments, and will be made in countless more.") (quoting *United States v.* Bethancourt, 65 F.3d 1074, 1082 (3d Cir. 1995) (McKee, J., dissenting)).

Finally, we agree with the Government that the jury's privacy concerns could not impact their final deliberations, and that the District Court corrected any potential bias by instructing the jury that their personal information would not be disclosed to the public. Thus, these arguments do not provide non-frivolous grounds to appeal Brown's conviction.

C

Defense counsel also explains that Brown's 300-month prison sentence was procedurally and substantively reasonable. Brown does not contest that his within-Guidelines sentence "reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc) (quoting *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (en banc)). Rather, he argues that the District Court committed procedural error by treating his simple assault conviction as a "crime of violence" that is "punishable by imprisonment for a term exceeding one year." USSG § 4B1.2(a).

Under the Sentencing Guidelines, a defendant qualifies as a career offender if, *inter alia*, "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." USSG § 4B1.1(a). A state or federal offense

13

punishable by more than one year in prison qualifies as a crime of violence if it either "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) . . . involves conduct that presents a serious potential risk of physical injury to another." USSG § 4B1.2(a).

In Pennsylvania, a person is guilty of simple assault if he: "(1) attempts to cause or intentionally, knowingly, or recklessly causes bodily injury to another; (2) negligently causes bodily injury to another with a deadly weapon; [or] (3) attempts by physical menace to put another in fear of imminent serious bodily injury . . . ." 18 PA. CONS. STAT. § 2701(a). In *United States v. Johnson*, 587 F.3d 203, 208-09 (3d Cir. 2009), we considered whether a simple assault conviction in Pennsylvania was a "crime of violence" under USSG § 4B1.2(a). We held that while a crime involving negligent or reckless conduct was not a crime of violence for career offender purposes, *see Begay v. United States*, 553 U.S. 137 (2008), a simple assault conviction could be a crime of violence if the defendant committed the act knowingly or intentionally. *Johnson*, 587 F.3d at 210-11.

Because the District Court was unable to determine from the face of the statute whether Brown committed an "intentional or knowing" act of violence, it was permitted to look "beyond the statutory elements" to the "charging document, written plea agreement, transcript of the plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Id.* at 208 (quoting *Shepard v. United States*, 544

U.S. 13, 16 (2005)). Here, the District Court considered a transcript of Brown's guilty plea colloquy for his simple assault conviction, during which he "offer[ed] to plead guilty to . . . simple assault, which means the Commonwealth would have to prove that [he] tried to cause or actually did cause bodily injury to another person." App. 43-44. Specifically, Brown agreed that "basically, what [he is being charged] with is pulling out [his] gun and pointing it." App. 44. Because Brown admitted to pointing a gun at a victim and agreed that simple assault requires proof of either actual bodily harm or an attempt to cause bodily harm, the District Court did not err in concluding that Brown's conviction constituted a "crime of violence" under § 4B1.2(a).

Brown also claims that because he was sentenced to probation, his crime does not qualify as a "felony" under § 4B1.1(a). However, as the application note accompanying § 4B1.2 explains, a "prior felony conviction" means a federal or state conviction for an offense punishable by imprisonment for a term exceeding one year, "regardless of whether the offense is specifically designated as a felony and regardless of the actual sentence imposed." *United States v. McAllister*, 927 F.2d 136, 138 (3d Cir. 1991). Under 18 PA. CONS. STAT. § 2701(a), a simple assault conviction is treated as a misdemeanor in the second degree and is thus punishable by a "term of imprisonment, the maximum of which is not more than two years." 18 PA. CONS. STAT. § 106(b)(7). Because Brown faced a maximum penalty of two years in prison, his simple assault conviction qualifies as a prior felony conviction under § 4B1.1(a).

15

## III

For the foregoing reasons, we will grant counsel's motion to withdraw and affirm the District Court's judgment of conviction and sentence.