FILED
United States Court of Appeals
Tenth Circuit

May 13, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

FABIAN PASILLAS-CASTANON,

Defendant-Appellant.

No. 07-5101

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. NO. CR-06-175-HDC)**

---

John D. Russell, Fellers, Snider, Blankenship, Bailey & Tippens, P.C., Tulsa, Oklahoma, for Appellant.

Timothy L. Faerber, Assistant United States Attorney (David E. O'Meilia, United States Attorney, Northern District of Oklahoma, with him on the brief), Office of the United States Attorney, Tulsa, Oklahoma, for Appellee.

---

Before **KELLY**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

The question raised in this appeal is whether the Speedy Trial Act is violated when law enforcement officials detain a person for civil deportation proceedings to facilitate a federal criminal investigation.

Fabian Pasillas-Castanon appeals his indictment and subsequent conviction for knowingly possessing a counterfeit green card, in violation of 18 U.S.C. § 1546(a). Pasillas-Castanon alleges the district court erred by not dismissing the indictment under the Speedy Trial Act, 18 U.S.C. § 3161(b), because more than thirty days elapsed between his civil arrest for illegal entry on August 5, 2006, and his indictment for possession of a counterfeit green card on October 4, 2006. He argues the government wrongfully detained him for deportation proceedings as a ruse to facilitate its investigation into the counterfeit charges.

Having jurisdiction under 28 U.S.C. § 1291, we conclude neither the Speedy Trial Act nor the ruse exception applies to Pasillas-Castanon's civil deportation arrest. We therefore AFFIRM.

## I. Background

The arrest and detention of Pasillas-Castanon arise from a series of events between August and October 2006. On August 5, 2006, Officer Leland Ashley and Detective Shawn Hickey of the Tulsa Police Department stopped a Ford Mustang illegally making a turn without signaling. At the time of the stop, there were three occupants inside the car, with Pasillas-Castanon occupying the front passenger seat. When Ashley approached the car, he noticed the backseat passenger was laying down inside the vehicle. Because Ashley and Hickey did not know if the passenger was dead or alive, they removed Pasillas-Castanon and the driver from the car and handcuffed them as a precautionary matter.

-2-

Eventually, Ashley and Hickey awakened the backseat passenger and determined he was drunk.

Checking for identification, Ashley received a green card from the driver and backseat passenger, and Hickey received a green card from Pasillas-Castanon. Ashley and Hickey, however, could not effectively communicate with the occupants—none of the officers spoke Spanish, and the occupants did not speak English.

To facilitate their questioning, Hickey decided to obtain the assistance of a Spanish speaking officer. He contacted Corporal Eric Nelson, who was riding with U.S. Immigration and Customs Enforcement (ICE) Special Agent James Van Stephens. Hickey knew Van Stephens spoke Spanish, and he asked them to come to the scene of the traffic stop.

When Van Stephens arrived, he reviewed the three green cards from Ashley. He quickly realized they were counterfeit. Van Stephens then asked the three occupants about their immigration status, and they all conceded they were illegally in the United States. Van Stephens arrested Pasillas-Castanon. The other two occupants were also arrested.

Immigration officials commenced administrative removal proceedings against Pasillas-Castanon. While the proceedings were pending, he was placed in the Oklahoma County jail, without bond.

A month later, on September 13, 2006, the United States filed a criminal complaint against Pasillas-Castanon, alleging he knowingly possessed a counterfeit green card. A grand jury indicted him on October 4, 2006, and two days later Pasillas-Castanon was removed from ICE custody by the U.S. Marshals. Because Pasillas-Castanon had been transferred to the custody of the U.S. Marshals, the Immigration Court terminated the administrative removal proceedings against him.

Pasillas-Castanon moved to dismiss the indictment, alleging the government failed to charge him within thirty days of his arrest in violation of the Speedy Trial Act. The district court denied this motion, and a jury convicted him for possession of a counterfeit green card. He was sentenced to six months' imprisonment and a three-year term of supervised release.

## II. Standard of Review

We review for an abuse of discretion a district court's denial of a motion to dismiss for violation of the Speedy Trial Act. *United States v. Abdush-Shakur*, 465 F.3d 458, 461 (10th Cir. 2006). The district court's compliance with the legal requirements of the Act are reviewed de novo and the district court's factual findings are accepted unless they are clearly erroneous. *Id.* "[W]hen the statutory factors are properly considered, and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not lightly be disturbed." *Id.* (quoting *United States v.*

-4-

*Cano-Silva*, 402 F.3d 1031, 1035 (10th Cir. 2005) (internal quotation marks omitted)).

### III.  Discussion

Pasillas-Castanon argues his indictment should be dismissed and his conviction overturned because his deportation proceedings were a mere ruse to keep him incarcerated until the United States could obtain an indictment. Because he believes the proceedings were a ruse, he argues the Speedy Trial Act was violated when he was indicted more than thirty days after his civil arrest on August 5, 2006.

We disagree.  First, the Speedy Trial Act generally does not apply to detentions based on civil deportation charges.  Second, the "ruse exception" to the Speedy Trial Act does not apply in the present case.

### A.  Speedy Trial Act

The Speedy Trial Act requires that "[a]ny information or indictment charging an individual with the commission of an *offense* shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."  18 U.S.C. § 3161(b) (emphasis added).  An "offense" refers to "any Federal *criminal* offense."  *Id.* § 3172(2) (emphasis added).  If the government fails to comply with the thirty-day time limit, the Act requires the dismissal of charges in the complaint, with or without prejudice.  *Id.* § 3162(a)(1).

Most courts interpreting this language do not apply it to arrests and detentions based on *civil* offenses. *See United States v. Garcia-Echaverria*, 374 F.3d 440, 450–51 (6th Cir. 2004) (explaining that unless the ruse exception applies, arrests and detentions made in connection with civil deportation proceedings do not trigger the Speedy Trial Act); *United States v. Dyer*, 325 F.3d 464, 468 (3d Cir. 2003) (same); *United States v. Garcia-Martinez*, 254 F.3d 16, 19 (1st Cir. 2001) (same); *United States v. Drummond*, 240 F.3d 1333, 1335–36 (11th Cir. 2001) (same); *United States v. De La Pena-Juarez*, 214 F.3d 594, 597–98 (5th Cir. 2000) (same); *United States v. Grajales-Montoya*, 117 F.3d 356, 366 (8th Cir. 1997) (same); *United States v. Cepeda-Luna*, 989 F.2d 353, 355 (9th Cir. 1993) (same). We likewise conclude, based on the plain language of the statute, arrests connected to civil matters do not trigger the Speedy Trial Act.

Deportation proceedings are civil matters. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984); *Garcia-Echaverria*, 374 F.3d at 451; *Dyer*, 325 F.3d at 468; *Garcia-Martinez*, 254 F.3d at 19; *Drummond*, 240 F.3d at 1336 n.3; *De La Pena-Juarez*, 214 F.3d at 597–98; *Grajales-Montoya*, 117 F.3d at 366; *Cepeda-Luna*, 989 F.2d at 355. Van Stephens arrested and detained Pasillas-Castanon on August 5, 2006, because he was "an alien present in the United States without being admitted or paroled." R., Vol. I, Doc. 19, Ex. 3 (quoting 8 U.S.C. § 1182(a)(6)(A)(I)). Three days later, Van Stephens served Pasillas-Castanon with a formal document charging him with this civil offense. As a

result of this offense, ICE initiated deportation proceedings against him, and detained him until completion of these proceedings. Because Pasillas-Castanon's arrest on August 5, 2006 was for a civil matter, the arrest did not trigger the Speedy Trial Act. The thirty-day time limit instead was triggered on October 4, 2006, when the U.S. Marshal's Service arrested Pasillas-Castanon in connection with the criminal offense of illegally possessing a counterfeit green card.

In sum, federal officials complied with the Speedy Trial Act because Pasillas-Castanon was indicted within thirty days of this arrest—in fact, he was indicted the same day he was arrested for the federal criminal offense.

## B. Ruse Exception

While civil arrests and detentions do not ordinarily trigger the Speedy Trial Act, they may activate it when law enforcement authorities collude with state or civil officials to detain a defendant as a mere ruse for later prosecution. *See, e.g.*, *De La Pena-Juarez*, 214 F.3d at 598 ("[T]he requirements of the Speedy Trial Act . . . would lose all meaning if federal criminal authorities could collude with civil or state officials to have those authorities detain a defendant pending federal charges solely for the purpose of bypassing the requirements of the Speedy Trial Act.").

Most circuits recognize the ruse exception. *See United States v. Woolfolk*, 399 F.3d 590, 596 n.7 (10th Cir. 2005); *Garcia-Echaverria*, 374 F.3d at 451; *Dyer*, 325 F.3d at 468–69; *Garcia-Martinez*, 254 F.3d at 19–20; *Drummond*, 240

F.3d at 1336; *United States v. Jones*, 129 F.3d 718, 723 (2d Cir. 1997); *Grajales-Montoya*, 117 F.3d at 366–367; *Cepeda-Luna*, 989 F.2d at 357. We agree with those courts that the Speedy Trial Act cannot be evaded through sham civil proceedings.

Pasillas-Castanon argues the ruse exception should apply here because although he "was being held for deportation, the evidence was unequivocal that he was also being held for purposes of criminal prosecution." Aplt. Br. 13–14. He cites various evidence from the record supporting this conclusion. For example, ICE Special Agent Munson testified that at the time Pasillas-Castanon was arrested, it was the intention of ICE to pursue criminal charges against him. Furthermore, additional paperwork prepared by ICE on November 16, 2006, stated "[a]t the time of processing, prosecution for possession of false immigration documents is being requested from the Northern District of Oklahoma." R., Vol. I, Doc. 29, Ex. 5.

The ruse exception is not easily triggered. We agree with the majority of courts that apply it only when a defendant demonstrates that the "*primary or exclusive purpose*" of a civil detention was to hold the defendant for future criminal prosecution. *Dyer*, 325 F.3d at 468; *Drummond*, 240 F.3d at 1336; *De La Pena-Juarez*, 214 F.3d at 598; *see also Garcia-Martinez*, 254 F.3d at 20 (holding ruse exception applies when the "sole or primary purpose" of the civil detention is to hold defendant for future criminal prosecution); *United States v.*

*Benitez*, 34 F.3d 1489, 1494 (9th Cir. 1994) (holding ruse exception applies when civil detention is "solely for the purpose of bypassing" the Speedy Trial Act).

The mere fact that the detaining authorities are aware other potential criminal charges are available does not trigger the exception. There must be evidence showing the detention is for the primary or exclusive purpose of furthering the criminal prosecution. Without evidence of wrongful collusion for this purpose, the exception does not apply.[1] In short, if the detaining authorities have a lawful basis for their civil detention, a defendant is not entitled to invoke the exception.

The evidence here shows that ICE had a lawful basis for holding Pasillas-Castanon and actively pursued deportation proceedings against him. The government produced substantial evidence demonstrating ICE diligently processed Pasillas-Castanon's administrative removal case. On August 17, 2006, for example, ICE transferred Pasillas-Castanon's file to Dallas where the immigration court was located. Attorneys for ICE then received his file on September 1, and reviewed the charges for legal sufficiency. The immigration court received his file

---

[1] Pasillas-Castanon also argues the district court incorrectly required the defendant to prove bad faith. *See* Aplt. Br. 19–20. We see no error. The test is whether the government officials wrongfully detained or colluded with other officials to detain a person in civil proceedings to evade the Speedy Trial Act. That fact determination inherently raises questions of bad faith that are a part of the determination of the officials' "primary or exclusive" purpose. *See*, *e.g.*, *Cepeda-Luna*, 989 F.2d at 357–58 (holding ruse exception did not apply because there was no evidence of government bad faith); *United States v. Orbino*, 981 F.2d 1035, 1036–37 (9th Cir. 1992) (same).

on September 5, and scheduled an initial hearing for September 25, 2006 and a deportation hearing for October 6, 2006. The government demonstrated below that these steps were consistent with a typical deportation proceeding in the Dallas region.

The record thus refutes any inference that criminal prosecution was the primary or exclusive purpose of Pasillas-Castanon's detention. *See, e.g.*, *United States v. Noel*, 231 F.3d 833, 836 (11th Cir. 2000) (holding evidence showing that the federal government actively pursued deportation proceedings against the detainee strongly supports the conclusion that criminal prosecution was not the primary purpose of the alien's detention); *United States v. Ortiz-Lopez*, 24 F.3d 53, 55 (9th Cir. 1994) (same). Moreover, even the fact that criminal law enforcement officials "are aware of, and perhaps slightly involved in, the deportation proceedings . . . would not establish, as a matter of law, the requisite collusion" to trigger the exception. *Grajales-Montoya*, 117 F.3d at 366–67.

Pasillas-Castanon nonetheless alleges ICE officials deliberately delayed his custody redetermination hearing to give federal prosecutors more time to file criminal charges against him. The district court found otherwise. Government witnesses testified that ICE made no deliberate effort to delay this hearing. In fact, any delay was the result of oversight or a backlog of cases. Based on this testimony, the district court concluded this hearing was not intentionally delayed, thus rebutting any inference of bad faith on the part of the officials.

Because Pasillas-Castanon failed to show the primary or exclusive reason ICE detained him was to hold him for future criminal prosecution, we see no abuse of discretion in the district court's determination that the ruse exception did not apply.

## IV. Conclusion

Because the district court properly concluded Pasillas-Castanon's arrest and indictment did not violate the Speedy Trial Act, we AFFIRM Pasillas-Castanon's conviction.