[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 13-14994

————————————————

D.C. Docket No. 1:10-cr-00086-RWS-ECS-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MIGUEL ALVARADO-LINARES,
a.k.a. Joker,
DIMAS ALFARO-GRANADOS,
a.k.a. Toro,
ERNESTO ESCOBAR,
a.k.a. Pink Panther,
a.k.a. Flaco,
JAIRO REYNA OZUNA,
a.k.a. Flaco,

Defendants - Appellants.

————————————————

Appeals from the United States District Court
for the Northern District of Georgia

————————————————

(June 20, 2017)

Before TJOFLAT, JULIE CARNES and MELLOY,[*] Circuit Judges.

PER CURIAM:

Following several murders tied to MS-13 gang activity in and around Atlanta, a jury convicted the defendants of RICO, Violent Crime in Aid of RICO ("VICAR"), and/or firearm offenses.    Individual defendants raise several arguments on appeal challenging the sufficiency of the indictment, alleging Speedy Trial Act violations, attacking one verdict as internally inconsistent, and challenging the sentences imposed.  In addition, defendants allege the district court incorrectly instructed the jury as to the meaning of "aiding and abetting" and as to the relative roles of the jury and the court in determining punishment.  We affirm in all respects.

I.  Background

The four defendants in this appeal, Miguel Alvarado-Linares, Ernesto Escobar, Dimas Alfaro-Granados, and Jairo Reyna-Ozuna, were members of a local subgroup of the international MS-13 gang.  Alvarado-Linares was the local leader, and the local group shared a pool of "gang guns."  The jury answered several specific questions as to each defendant for enhancement or conviction purposes.  Also, as to firearm counts, the jury determined whether each defendant brandished a weapon and whether a death resulted. All four defendants were convicted of RICO conspiracy with some being found to have an enhancement for RICO involving murder.  All four defendants also were convicted of different accompanying individual counts for related VICAR and/or firearm offenses.

---

[*] Honorable Michael J. Melloy, United States Circuit Judge for the Eighth Circuit, sitting by designation.

Evidence at trial focused upon several individual violent crimes. In one instance, Defendant Alvarado-Linares directed and participated in the execution-style murder of a fellow gang member, Lal Ko, who was suspected of being a police informant. A different gang member actually committed the shooting. Defendant Alfaro-Granados also participated in this murder.

In another instance, a different gang member wanted to "calm down" or leave the gang. Defendant Alvarado-Linares directed this gang member to perform a murder as the price of being allowed to leave. Alvarado-Linares and Alfaro-Granados selected a rival gang member to be murdered. These two defendants followed in a separate car when, on a highway, the departing member shot and killed one of the rival gang members and non-fatally shot a second rival gang member.

In a third instance, Defendant Escobar and another gang member fought with rival gang members at a gas station where the rival gang members worked. After the fight, and after leaving the gas station, Escobar called Defendant Reyna-Ozuna and reported the fight. Reyna-Ozuna purportedly held a leadership role at the time. Reyna-Ozuna, Escobar, and other gang members later returned to the gas station. Reyna-Ozuna provided a .45 caliber handgun, and Escobar and another gang member took the gun to a secluded vantage point near the gas station. From that vantage point, Escobar or the other gang member shot and killed one of the participants from the earlier fight, a sixteen-year-old rival gang member.

The jury found Alvarado-Linares guilty on nine Counts, including RICO conspiracy with an enhancement for murder, in violation of 18 U.S.C. § 1962(d); multiple VICAR murders, in violation of 18 U.S.C. §§ 2 and 1959(a)(1); and multiple firearm offenses. Alvarado-Linares received three life sentences and six

terms of years with several of the terms to be served consecutive to the life sentences.[1]

---

[1] The jury found Alvarado-Linares guilty as follows:

Count 1:    RICO conspiracy in violation of 18 U.S.C. § 1962(d);

Count 2:    VICAR, namely, aiding and abetting the murder of fellow gang member Lal Ko in violation of 18 U.S.C. §§ 2 and 1959(a)(1);

Count 3:    Aiding and abetting the use and carrying of a firearm in relation to a crime of violence (the VICAR offense of Count 2) in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(iii);

Count 4:    VICAR, namely, aiding and abetting the murder on the highway in violation of 18 U.S.C. §§ 2 and 1959(a)(1);

Count 5:    Aiding and abetting the use and carrying of a firearm in relation to a crime of violence (the VICAR offense of Count 4) in violation of 18 U.S.C. §§ 2 and 924(c)(1)(C)(i);

Count 8:    VICAR, namely, aiding and abetting the murder at the gas station in violation of 18 U.S.C. §§ 2 and 1959(a)(3);

Count 9:    Aiding and abetting the use and carrying of a firearm in relation to a crime of violence (the VICAR offense of Count 8) in violation of 18 U.S.C. §§ 2 and 924(c)(1)(C)(i);

Count 10:   VICAR, namely, aiding and abetting the murder of another gang member in violation of 18 U.S.C. §§ 2 and 1959(a)(3);

Count 11:   Aiding and abetting the use and carrying of a firearm in relation to a crime of violence (the VICAR offense of Count 10) in violation of 18 U.S.C. §§ 2 and 924(c)(1)(C)(i).

Alvarado-Linares was sentenced to concurrent life sentences on Counts 1, 2, and 4; concurrent twenty-year sentences on Counts 8 and 10; a ten-year sentence on Count 3 and twenty-five-year sentences on Counts 5, 9, and 11, with the ten- and twenty-five-year sentences to be served consecutive to each other and to all other sentences.

The jury found Escobar guilty on three Counts, including RICO conspiracy with an enhancement for murder, a VICAR murder, and a weapons charge. Escobar received two concurrent life sentences and a consecutive term of years.[2]

The jury found Alfaro-Granados guilty on five Counts, including RICO conspiracy with an enhancement for murder, two VICAR murders, and two firearm Counts.    Alfaro-Granados received three concurrent life sentences with two consecutive terms of years.[3]

---

[2] The jury found Escobar guilty as follows:

Count 1:        RICO conspiracy in violation of 18 U.S.C. § 1962(d);

Count 18:       VICAR, namely, aiding and abetting murder in violation of 18 U.S.C. §§ 2 and 1959(a);

Count 19:       Aiding and abetting the use and carrying of a firearm in relation to a crime of violence in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(iii).

Escobar was sentenced to concurrent life sentences on Counts 1 and 18 with a consecutive ten-year sentence on Count 19.

[3] The jury found Alfaro-Granados guilty as follows:

Count 1:        RICO conspiracy in violation of 18 U.S.C. § 1962(d);

Count 2:        VICAR, namely, aiding and abetting the murder of fellow gang member Lal Ko in violation of 18 U.S.C. §§ 2 and 1959(a)(1);

Count 3:        Aiding and abetting the use and carrying of a firearm in relation to a crime of violence (the VICAR offense of Count 2) in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(iii);

Count 4:        VICAR, namely, aiding and abetting the murder on the highway in violation of 18 U.S.C. §§ 2 and 1959(a)(1);

Reyna-Ozuna was found guilty of RICO conspiracy but without an enhancement for RICO conspiracy involving murder. He was found not guilty of the VICAR murder at the gas station and not guilty of a § 924(j) charge alleging the use or carrying of a firearm in relation to a violent crime resulting in death. But, he was found guilty of a lesser-included § 924(c) charge for using or carrying a firearm. In addition, the jury specifically found that Reyna-Ozuna did not actually brandish a firearm. Reyna-Ozuna received a sentence of ninety-six months on the RICO Conspiracy Count, and a consecutive sixty months for the § 924(c) firearm conviction.[4] We present additional facts material to individual arguments below.

---

| Count 5: | Aiding and abetting the use and carrying of a firearm in relation to a crime of violence (the VICAR offense of Count 4) in violation of 18 U.S.C. §§ 2 and 924(c)(1)(C)(i). |
|---|---|

Alfaro-Granados was sentenced to concurrent life sentences on Counts 1, 2, and 4; a ten-year sentence on Count 3; and a twenty-five-year sentence on Count 5, with the ten- and twenty-five-year sentences to be served consecutive to each other and to all other sentences.

[4] The jury found Reyna-Ozuna guilty as follows:

| Count 1: | RICO conspiracy in violation of 18 U.S.C. §§ 1962(d), without an enhancement for murder; |
|---|---|
| Count 19: | Aiding and abetting the use and carrying of a firearm in relation to a crime of violence in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(i). |

Reyna-Ozuna received a ninety-six-month sentence on the RICO count and a consecutive sixty-month sentence for the firearm count.

II.  Discussion

a.  Alvarado-Linares

Alvarado-Linares argues the district court lacked subject matter jurisdiction over his case because the indictment failed to allege facts that could support the existence of an "association in fact" for purposes of demonstrating a RICO enterprise.  He does not challenge the sufficiency of the evidence presented at trial to establish this same element of the RICO offense.  He also argues the indictment alleged merely a series of intrastate, state-law offenses and failed to demonstrate a substantial effect on interstate commerce.  Having reviewed the detailed and extensive indictment, we find these arguments to be wholly without merit and affirm the judgment in this regard without further comment.  *See United States v. Jordan*, 582 F.3d 1239, 1245 (11th Cir. 2009) (per curiam) ("An indictment is considered legally sufficient if it: '(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.'" (quoting *United States v. Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002))); *United States v. Flores*, 572 F.3d 1254, 1267–68 (11th Cir. 2009) (per curiam) (holding that a RICO conspiracy as a whole must have an effect on interstate commerce and finding the requisite nexus based upon participation in a national-scale gang).

Alvarado-Linares also alleges a violation of the Speedy Trial Act, 18 U.S.C. § 3161, arguing that the calculation of the time period in which he should have been indicted by federal authorities should have started with his arrest on state charges.  Accordingly, he argues that the district court erred in refusing to dismiss his indictment, and also in denying his request for an evidentiary hearing to

7

explore the extent of cooperation between state and federal law enforcement officials.  Additional facts are necessary for examination of these arguments.

Alvarado-Linares was arrested on state charges on January 24, 2009.  While still in state custody, he was indicted federally on October 27, 2009, for being an illegal alien in possession of a firearm.  The State then dropped its charges and, on November 4, 2009, he was taken into custody by federal authorities on the firearm charge.  Subsequently, on February 24, 2010, while still in federal custody, he was indicted on the present counts, and the government dropped its initial firearm charge.

The Speedy Trial Act requires that an individual arrested on federal charges be indicted within thirty days from the date of the arrest.  *See* § 3161(b). Alvarado-Linares asserts that state and federal authorities communicated extensively during his state custody and that the state was merely holding him on its charges until federal authorities could indict him on federal charges.  Based on the alleged collaborative conduct between state and federal officials, Alvarado-Linares argues that the date of his state arrest should have been treated as if it were a federal arrest and he should have therefore been indicted by federal authorities within thirty days of that state arrest, or by February 23, 2009.  Because the federal authorities missed this deadline for indicting him on federal charges that Alvarado-Linares imputes to them, he asks that his indictment be dismissed or, in the alternative, that a hearing be held to explore the state and federal prosecutors' intentions, actions, and communications.

Alvarado-Linares raised the Speedy Trial Act issue below.  A magistrate judge issued a report and recommendation denying relief.  Alvarado-Linares objected, and the district court adopted the recommendation.  We therefore review

*de novo* the denial of relief on Speedy Trial Act grounds.  *See United States v. Williams*, 314 F.3d 552, 556 (11th Cir. 2002) (per curiam); *United States v. Twitty*, 107 F.3d 1482, 1488 (11th Cir. 1997).  We review for abuse of discretion the district court's denial of an evidentiary hearing.  *Diveroli v. United States*, 803 F.3d 1258, 1262 (11th Cir. 2015).

It is long and well-settled in this Circuit that, notwithstanding any coordination between state and federal officials, the time within which federal authorities must indict a defendant under the Speedy Trial Act is measured by the date of the *federal* arrest, not any state arrest.    *See United States v. Russo*, 796 F.2d 1443, 1450–51 (11th Cir. 1986); *United States v. Bell,* 833 F.2d 272, 277 (11th Cir. 1987).  *Accord United States v. Lewis,* 732 F.3d 6, 12 (1st Cir. 2013); *United States v. Woolfork,* 399 F.3d 590, 595-96 (4th Cir. 2005).

Alvarado-Linares nonetheless argues that, for purposes of Speedy Trial Act calculations, we should impute the state arrest date to federal authorities when the state has held the defendant only as a "ruse" to give federal authorities time to charge the defendant.  It is true that we have recognized the *possibility* of a narrow "ruse" exception for purposes of the Speedy Trial Act when federal immigration officials detain an immigrant, "not to effectuate deportation, but rather as a 'mere ruse[] to detain a defendant for later criminal prosecution.'"  *United States v. Noel,* 231 F.3d 833, 836 (11th Cir. 2000)); *accord United States v. Drummond*, 240 F.3d 1333, 1336 (11th Cir. 2001).

But this potential "ruse" exception is limited to a situation in which *federal* immigration officials detain an immigrant ostensibly to remove him from the country, while in reality they actually hold him solely for the purpose of bringing *federal* criminal charges.  The government correctly points out that Alvarado-

9

Linares identifies no Supreme Court or Eleventh Circuit authority recognizing a ruse exception in a situation like the present case: state confinement on state charges followed by federal arrest and indictment on federal charges. Joint state and federal investigations are the norm, and extensive discussion back and forth between state and federal authorities is not uncommon. Because state authorities at all times held sovereign discretion as to how they separately might handle their own prosecution or non-prosecution for state offenses, it was not error to deny relief as to this issue. And, given the strength of the government's position in this regard and the absence of authority to support Alvarado-Linares's theory, the district court did not abuse its discretion in denying an evidentiary hearing. *See Diveroli*, 803 F.3d at 1263–64 (no abuse of discretion in denial of a hearing where authority would not otherwise permit relief).

    b. Escobar

Like Alvarado-Linares, Escobar challenges the indictment and alleges a Speedy Trial Act violation. Escobar, however, did not raise either of these issues below, so our review is merely for plain error. *See United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005) ("An appellate court may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion . . . only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." (citations omitted)). The facts Escobar asserts to support his Speedy Trial Act argument are substantially similar to the facts Alvarado-Linares presents, and

10

Escobar asserts no independent arguments regarding the indictment.[5]  Because we find no error in Alvarado-Linares's case even under *de novo* review, we find no plain error in Escobar's case.  Without error, there cannot be plain error.

Escobar also asserts an Eighth Amendment challenge to his life sentence. He argues the evidence at trial showed only that he was involved with the shooting at the gas station, not that he actually fired the fatal shot.  In fact, the jury convicted him of aiding and abetting the use and carrying of a firearm in relation to a crime of violence in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(iii), but did not find him guilty of the greater offense of using a firearm to cause a death, § 924(j). According to Escobar, the jury's finding shows he did not fire the gun, and therefore, it amounts to cruel and unusual punishment under a proportionality principle to impose a life sentence.

We reject this argument.  Regardless of the details of the jury's findings, the limited proportionality principle in the Eighth Amendment does not preclude the imposition of a statutorily authorized life sentence for a non-shooter's involvement in a murder.  *See United States v. Reynolds*, 215 F.3d 1210, 1214 (11th Cir. 2000) (per curiam) ("[I]f it is grossly disproportionate, the court must then consider the sentences imposed on others convicted in the same jurisdiction and the sentences imposed for commission of the same crime in other jurisdictions."); *United States v. Brant*, 62 F.3d 367, 368 (11th Cir. 1995) (per curiam) ("In non-capital cases, the Eighth Amendment encompasses, at most, only a narrow proportionality principle.").  Life imprisonment for active participation in a gang-related execution simply is not grossly disproportionate to the offense, regardless of whether the jury

---

[5] Escobar was arrested on state charges on June 9, 2008.  On October 27, 2009, he was indicted federally for possessing a stolen firearm, and, on November 3, 2009, he was arrested on that federal charge.  He was indicted on the present charges on February 24, 2010, and the initial federal firearm charge was dropped shortly thereafter.

found Escobar or a different gang member actually fired the fatal shot.  *See* 18 U.S.C. § 1963(a) (life sentence for RICO involving murder); 18 U.S.C. § 1959(a)(1) (life sentence for VICAR murder).

Finally, Escobar argues the district court erred because it instructed the jury that punishment was an issue reserved for the court and that the jury's role was cabined to determining the facts and finding defendants guilty or not guilty of the charged offenses.  Escobar argues that, because his case involved mandatory sentences, there remained no decisions for the court regarding punishment after determinations of guilt, thus making the court's description of roles inaccurate as to this case.  Again, we reject Escobar's argument.  The district court properly instructed the jury using a model instruction that accurately described the relative roles of the court and the jury.  The fact that no actual discretion remained for the court after the finding of guilt is immaterial.  It was still proper to instruct the jury that its role was to assess the facts and find the defendants guilty or not guilty.  *See United States v. Thigpen*, 4 F.3d 1573, 1577–78 (11th Cir. 1993) (holding that a departure from this general instruction is not authorized even in cases involving possible insanity defenses and resulting commitments to mental health facilities).

c. Alfaro-Granados

Alfaro-Granados challenges his life sentence as cruel and unusual punishment pursuant to the Eighth Amendment.  He acknowledges that success of such a challenge is "exceedingly rare" under the limited proportionality principle applicable to non-capital cases.  *Flores*, 572 F.3d at 1268 (quoting *United States v. Raad*, 406 F.3d 1322, 1323 (11th Cir. 2005)).  He presents no argument illustrating his case to be exceedingly rare nor does he distinguish his case from that of his

12

codefendant Escobar.  We therefore reject his challenge for the same reasons stated above.

   d.   Reyna-Ozuna[6]

   To review, Reyna-Ozuna was found guilty of Count 1 for RICO conspiracy but was specifically found not guilty regarding RICO conspiracy involving murder. He was found not guilty of Count 18—the VICAR murder at the gas station.  And, he was found not guilty of the § 924(j) charge in Count 19 regarding use of a firearm in relation to a violent crime causing the death of another.  But, he was found guilty of what was, from an elements point of view, the lesser-included § 924(c) charge underlying Count 19: use of a firearm in relation to a crime of violence (without specifying that the use caused the death of another).  In addition, the jury specifically found that Reyna-Ozuna did not actually brandish the firearm in relation to this count.

   Reyna-Ozuna argues it was inconsistent to find him guilty of the § 924(c) count for aiding or abetting the use or carrying of a firearm in relation to a crime of violence while acquitting him as to RICO conspiracy involving murder and finding he did not brandish the firearm or cause a death.  According to Reyna-Ozuna, the only identified predicate violent crime was the VICAR murder of which he was

---

[6] Reyna-Ozuna challenges his 156-month sentence as cruel and unusual under the Eighth Amendment.  We reject his challenge for the reasons previously stated.  Further, Reyna-Ozuna argues for the first time on appeal that the district court erroneously instructed the jury as to the correct elements and intent requirement for "aiding and abetting."  He cites *Rosemond v. United States*, 134 S. Ct. 1240, 1251–52  (2014), a case in which the Supreme Court held aiding and abetting the use of a firearm in a drug transaction required a showing that the party not brandishing the firearm have advance knowledge that the codefendant would be carrying the firearm.  *Rosemond* is factually inapposite for several reasons, primarily because the evidence in Reyna-Ozuna's case showed quite clearly he *provided* the firearm.  In any event, our review is for plain error and he has not made the showing required for relief under this stringent level of review.

acquitted (Count 18). Further, the jury found him not responsible for the death resulting from the murder of Count 18 when the jury acquitted on the § 924(j) charge of Count 19. *See* 18 U.S.C. § 924(j) (providing enhanced penalties for causing the death of another person through use of a firearm "in the course of a violation of" § 924(c)). He argues that, in the absence of some other predicate violent crime, his § 924(c) conviction is a logical impossibility and creates an inconsistency internal to one count.

In general, inconsistent verdicts as between counts are not grounds for relief because a reviewing court can never know "whose ox has been gored." *United States v. Powell*, 469 U.S. 57, 65 (1984). If a mistake has occurred and the verdicts do not actually reflect the jury's true opinions, it cannot be known whether the jury erred by unintentionally convicting on one of the two counts or by failing to convict on one of the two counts. *See Dunn v. United States*, 284 U.S. 390, 393 (1932) ("The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." (citation omitted)). Further, given the shield preventing analysis of juror deliberations, it can never be known whether the jury, in fact, purposefully engaged in jury nullification as to the acquitted count. *See Powell*, 469 U.S. at 66–67. In short, where a jury's act of lenity can explain a purported inconsistency, no relief is available. *Id.*

Reyna-Ozuna's case, however, involves a twist. It may, in fact, be a mislabeling of this issue to discuss it in terms of an internally inconsistent verdict. What he specifically alleges is an inconsistency between an underlying offense serving as a contemporaneous predicate, and a compound offense that depends upon the jury's conclusions as to the facts of the predicate. Regardless, what

14

matters is not the presence of an arguable inconsistency; what matters is the sufficiency of the evidence to support the *actual count of conviction*. Here, that evidence is sufficient.

A similar situation was present in *Powell*, where the Court rejected the theory of relief for inconsistent verdicts. The Court held firmly that an acquittal on one count could be deemed an act of lenity and stated that independent review for sufficient evidence looking at the facts rather than the outcomes ensured adequate protection. There, the Court stated:

> [R]espondent's argument that an acquittal on a predicate offense necessitates a finding of insufficient evidence on a compound felony count simply misunderstands the nature of the inconsistent verdict problem. Whether presented as an insufficient evidence argument, or as an argument that the acquittal on the predicate offense should collaterally estop the Government on the compound offense, the argument necessarily assumes that the acquittal on the predicate offense was proper—the one the jury "really meant." This, of course, is not necessarily correct; all we know is that the verdicts are inconsistent. The Government could just as easily—and erroneously—argue that since the jury convicted on the compound offense the evidence on the predicate offense must have been sufficient. The problem is that the same jury reached inconsistent results; once that is established principles of collateral estoppel— which are predicated on the assumption that the jury acted rationally and found certain facts in reaching its verdict—are no longer useful.

*Powell*, 469 U.S. at 68.[7]

_____

[7] The government argues any alleged inconsistency cannot serve as a basis for relief for Reyna-Ozuna because Reyna-Ozuna requested the § 924(c) instruction, thus inviting any error that may have arisen due to the use of that instruction. Because the inconsistent-verdict argument fails of its own accord, it is unnecessary to address the invited error doctrine. Even if it were necessary to address the issue, our review of the relevant transcript pages suggests Reyna-Ozuna may not have requested the lesser-included instruction in such a specific manner as to make the alleged error he now complains of invited error.

Applying this standard, we conclude there was more than sufficient evidence to convict Reyna-Ozuna of a violation of 18 U.S.C. § 924(c).  The alleged internal inconsistency is not inherent; it may be explained as a matter of lenity or jury nullification, and therefore, relief is unavailable.

We affirm the judgment of the district court.