**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 8, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

PATRICK SAMIR ASFOUR,

      Defendant - Appellant.

No. 16-6231
(D.C. No. 5:15-CR-00246-R-2)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

     Defendant Patrick Samir Asfour claims that he was denied his rights under the federal Speedy Trial Act. His problems began when he and a companion were driving their two vehicles on an interstate highway. A traffic stop by the Oklahoma Highway Patrol (OHP) led to the discovery of firearms and drugs in the companion's vehicle. The two drivers were arrested and placed in county jail. A few days later an information was filed in state court charging them with eight violations of Oklahoma law. The state preliminary hearing was postponed or continued multiple times until finally, nine months

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

after the traffic stop, the two men were indicted in the United States District Court for the Western District of Oklahoma.

Under the Speedy Trial Act a federal arrestee must be charged by federal indictment or information within 30 days of arrest. *See* 18 U.S.C. § 3161(b). Defendant moved in federal court to dismiss the indictment against him for failure to comply with that requirement, arguing that his true federal arrest occurred at the time of the traffic stop. He contended that the state arrest and confinement were merely a ruse to avoid the 30-day requirement and give federal authorities extra time to pressure the drivers to cooperate with the prosecution. After an evidentiary hearing the district court denied the motion, ruling that Defendant had not shown a ruse. Defendant then entered into a plea bargain, agreeing to plead guilty to three counts of the indictment but reserving the right to appeal his motion to dismiss. Exercising jurisdiction under 28 U.S.C. § 1291, we hold that his appeal is without merit. The district court did not abuse its discretion in denying Defendant's motion.

## I.   BACKGROUND

On January 30, 2015, Defendant and Ben Issa Saoud were driving on Interstate 40 in separate vehicles. Katelyn Worstell, a pregnant 18-year old woman, was riding with Defendant. When OHP Trooper Clint Painter attempted to pull Saoud over, Defendant's vehicle struck Painter's patrol car. The government contends that Defendant intentionally hit Painter's vehicle to draw attention away from Saoud, as he was carrying more than 100 pounds of marijuana and two firearms. After all three vehicles came to a

2

stop, another OHP trooper arrived to assist Painter, and they discovered the drugs and guns in Saoud's vehicle. Defendant, Saoud, and Worstell were arrested.

Sam Ward, a special agent with the federal Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and OHP Trooper Mark Dlugokinski, who had been assigned to a federal Drug Enforcement Administration (DEA) task force, came to the scene to assist with the investigation. Although Defendant characterizes Dlugokinski as a federal officer, he testified otherwise and submitted an affidavit stating that his "parent agency" is OHP and that his primary investigative priority remains with OHP, though he coordinates with other agencies. R. Vol. 1 at 148. Ward testified that he became involved in the investigation because one of the firearms was a short-barreled rifle, possession of which violates federal law.

On the day of the arrest, Ward and Dlugokinski interviewed the three suspects separately. Ward and Dlugokinski presented Defendant with an ATF Miranda-waiver form, which he signed. Three days later Dlugokinski and another OHP trooper interviewed Defendant, this time offering an OHP waiver form. During these interviews Defendant and Worstell were advised of the federal charges and sentences they could be facing; and on two occasions the other interviewer said that Dlugokinski was with the DEA.

On February 4 the State of Oklahoma charged Defendant on eight counts, including assault and battery with a deadly weapon, illegal possession of firearms, trafficking in illegal drugs, and conspiracy to traffic in illegal drugs. There were significant delays in the preliminary hearing. All counsel agreed on February 25 to

3

postpone the hearing until March 13. On March 13, Defendant agreed to reschedule the hearing for April 10. On April 10 the prosecutor requested a continuance to assure the appearance of a witness, and the court granted a continuance to June 5, over Defendant's objection. Some testimony was presented on June 5, but all parties agreed to continue the hearing until July 31. On that date, Defendant requested a continuance because of discovery issues and the court reset the hearing for October 9. The record before us is silent on what happened regarding the preliminary hearing scheduled for October 9.

On November 18, Defendant was indicted in federal court. The state charges were dismissed a week later. On January 7, 2016, Defendant moved to dismiss the indictment for failure to comply with the Speedy Trial Act.

At the evidentiary hearing on the motion, Defendant argued that his state prosecution was instigated by the federal government to avoid the Speedy Trial Act's requirements because it wanted to keep Defendant and Saoud in county jail for several months to put pressure on them to cooperate, as evidenced by the delay in the preliminary hearing. To support his claim, Defendant played audio recordings of Dlugokinski's interviews with Defendant and Worstell in which other officers identify him as a DEA agent and the suspects are informed of potential federal charges and sentences.

In response, Dlugokinski clarified during the hearing that although he had worked with a DEA task force since November 2011, he was an OHP trooper. He also explained that in the interviews he used the long potential federal sentences as leverage to encourage Defendant and Worstell to cooperate with the state investigation. And he testified that his investigation was building a state case, not a federal case, until shortly

4

before the federal charges were brought. As for the delay of the preliminary hearing, the government argued that Defendant agreed to most of the continuances and requested one himself. It said that there was no actual evidence of collusion between state and federal law enforcement to detain Defendant and Saoud in preparation for a federal prosecution.

The district court denied Defendant's motion, finding "no evidence . . . whatsoever" that the state prosecution was a ruse to hold Defendant for federal prosecution to circumvent the Act. R., Vol. 1 at 193–94. In particular, it found that the officers "were trying to use the potential of a federal prosecution as leverage to get people to cooperate in the state prosecution . . . ." *Id.* at 194.

On February 23, Defendant pleaded guilty to three counts of the indictment—a Travel Act crime of violence, *see* 18 U.S.C. § 1952(a)(2); possession of marijuana with intent to distribute, *see* 21 U.S.C. § 841(a)(1); and carrying a firearm during and in relation to a drug-trafficking crime, *see* 18 U.S.C. § 924(c)(1)(A). He was sentenced to 190 months' imprisonment.

## II.    DISCUSSION

We review for abuse of discretion a district court's denial of a motion to dismiss for violation of the Speedy Trial Act. *See United States v. Abdush-Shakur*, 465 F.3d 458, 461 (10th Cir. 2006). This standard of review encompasses de novo review of the district court's compliance with the legal requirements of the Act and review for clear error of its factual findings. *See id.*

The Act requires that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which

5

such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). If the government fails to comply with this time limit, the charges in the complaint must be dismissed, with or without prejudice. *See id.* at § 3162(a)(1).

The general rule is that "[a]n individual is 'arrested' under the Speedy Trial Act only when he is taken into custody after a federal arrest for the purpose of responding to a federal charge." *United States v. De La Pena-Juarez*, 214 F.3d 594, 597 n.6 (5th Cir. 2000). Some courts, however, have recognized a "ruse" exception to the general rule when a person is confined on grounds other than a federal criminal charge for the purpose of avoiding the requirements of the Act. Many of these cases involve confinement by immigration authorities. *See, e.g.*, *United States v. Garcia-Echaverria*, 374 F.3d 440, 451–52 (6th Cir. 2004) (assuming without deciding that ruse exception would apply in immigration context if there was collusion between immigration and criminal-prosecution authorities, but facts did not support Speedy Trial Act violation); *United States v. Dyer*, 325 F.3d 464, 468 (3d Cir. 2003) (describing ruse exception in immigration context, but declining to decide whether to adopt it as facts did not demonstrate ruse); *De La Pena-Juarez*, 214 F.3d at 598; *United States v. Pena-Carrillo*, 46 F.3d 879, 883 (9th Cir. 1995). A few have involved incarceration under state criminal authority. *See United States v. Benitez*, 34 F.3d 1489, 1494 (9th Cir. 1994) ("The Speedy Trial Act would lose all force if federal criminal authorities could arrange with state authorities to have the state authorities detain a defendant until federal authorities are ready to file criminal charges. For this reason, Speedy Trial Act time periods may be triggered by state detentions that are merely a ruse to detain the defendant solely for the

6

purpose of bypassing the requirements of the Act."); *United States v. Woolfolk*, 399 F.3d 590, 596, 596 n.7 (4th Cir. 2005) (state arrest could fall under Speedy Trial Act if "the Government has knowledge that an individual is being held by state authorities solely to answer to federal charges"). At least one circuit, however, apparently refused to apply the exception in that context because of the independent sovereignty of the States. *See United States v. Alvarado-Linares*, 698 F. Appx. 969, 974 (11th Cir. 2017) (rejecting application of ruse exception to arrests or detentions under state law by state officials "[b]ecause state authorities at all times held sovereign discretion as to how they separately might handle their own prosecution or non-prosecution for state offenses").

This circuit has yet to rule on whether there is a ruse exception for state arrests, but we have adopted the ruse exception when the *federal* government *civilly* detains an individual to avoid Speedy Trial Act requirements. *See United States v. Pasillas-Castanon*, 525 F.3d 994, 997–98 (10th Cir. 2008) (alien held civilly by immigration authorities). In that circumstance we held that "[t]he ruse exception is not easily triggered." *Id.* at 998. A defendant must "demonstrate[] that the *primary or exclusive purpose* of a civil detention was to hold the defendant for future criminal prosecution." *Id.* Moreover, "[w]ithout evidence of wrongful collusion for [the purpose of holding a defendant for future prosecution], the exception does not apply. In short, if the detaining authorities have a lawful basis for their civil detention, a defendant is not entitled to invoke the exception." *Id.* (footnote omitted). Further, the defendant must prove bad faith. *See id*. n.1. Assuming without deciding that we would adopt a ruse exception for state arrests, defendants would need to meet this heavy burden of demonstrating that "the

7

*primary or exclusive purpose* of [the state detention] was to hold the defendant for future [federal] prosecution" and that the state authorities did not have a "lawful basis for their [state] detention." *Id.*

The district court ruled that Defendant had not established the prerequisites for application of the ruse exception, and we hold that its ruling was not an abuse of discretion. Defendant contends that improper collusion between federal and state officials was demonstrated by evidence that (1) federal agents were involved in the investigation[1]; (2) his state prosecution was delayed for a number of months; and (3) Defendant and Worstell were threatened with federal prosecution. We are not persuaded.

Cooperation between state and federal law-enforcement officers is a commonplace that makes investigations more effective and efficient (the precise reason why a state trooper would be assigned to a DEA task force). Cooperative investigations may result in state prosecution or federal prosecution, depending on many considerations. Notably, Defendant presents no evidence of involvement by federal prosecutors before the federal indictment, although even evidence of such involvement would likely reflect just prosecutorial cooperation rather than federal use of the state criminal-justice system as a mere cat's-paw. We have held that involvement of federal criminal law-enforcement officers in immigration proceedings did not in itself trigger the ruse exception. *See*

---

[1] In his appellate brief, Defendant also relies on Ward's testimony at the pretrial detention hearing that he started "piecing the case together" after first interviewing Worstell months before federal charges were brought. R., Vol. 1 at 76–78. But this evidence was not presented to the district court as part of Defendant's argument that the ruse exception applied, so we need not address it.

8

*Pasillas-Castanon*, 525 F.3d at 999; *see also Benitez*, 34 F.3d at 1493–95 (even when state arrest was result of federal investigation and federal law-enforcement officers detained defendants until state-law enforcement officers arrived to arrest them, district court did not err in finding no ruse). In any event, Dlugokinski testified (and the district court could credit) that the investigation was aimed at state charges until shortly before Defendant's federal indictment. *See Benitez*, 34 F.3d at 1495 (district court did not err in relying on state prosecutor's testimony that State had intended to prosecute defendants if federal charges were not brought soon).

Nor do the delays in the state prosecution suggest that the state prosecution was engineered by federal prosecutors. Of the nearly 10 months between Defendant's arrest and his federal indictment, less than two months of the continuances were over Defendant's objection, and more than two months (indeed, the final continuance) was at Defendant's request. There was no evidence of intentional stalling for any improper purpose. The district court was hardly unreasonable in being unpersuaded that the delay smacked of federal interference.

Finally, warnings about possible stiff federal sentences do not show that a decision had been made to pursue federal prosecution. Dlugokinski gave a perfectly plausible reason for telling the suspects of the federal charges and sentences that could be imposed. It is not unheard of for investigators to try to induce cooperation by making the risks of noncooperation look as severe as possible. The district court credited that reason, stating that the officers "were trying to use the potential of a federal prosecution as leverage to get people to cooperate in the state prosecution." R., Vol. 1 at 193–94. *See Pasillas-*

9

*Castanon*, 525 F.3d at 998 ("The mere fact that the detaining authorities are aware other potential criminal charges are available does not trigger the [ruse] exception.").[2]

In short, the district court properly ruled that Defendant had failed to show that "the *primary or exclusive purpose* of [the state detention] was to hold [Defendant] for future [federal] criminal prosecution." *Pasillas-Castanon*, 525 F.3d at 998. Even if we were to adopt the ruse exception for state detention, Defendant would not be entitled to relief.

**III.    CONCLUSION**

We **AFFIRM** the judgment below.

Entered for the Court


Harris L Hartz
Circuit Judge

---

[2]  The government also contends that Defendant failed to show that the state arrest was unlawful or in bad faith, which it argues are requirements for applying the ruse exception. The district court did not rely on either ground and we need not address them.